[No. 47212-7-I.  Division One.  April 22, 2002.]

HAROLD J. COTTON, *Respondent*, v. DONALD B. KRONENBERG, ET AL., *Appellants*.

*Anne M. Bremner, Blake E. Dias,* and *Kim M. Tran* (of *Stafford Frey Cooper*) and *Gregory M. Miller,* for appellants.

*Brian H. Krikorian* and *Erica Krikorian*, for respondent.

Cox, J. — At issue is whether Donald Kronenberg breached his fiduciary duty to Harold Cotton, his former client, rendering unenforceable a written fee agreement between the two. We must also decide whether Kronenberg violated the Consumer Protection Act (CPA) in connection with that agreement.

Because counsel breached his fiduciary duties to his client, the fee agreement is unenforceable. Accordingly, the trial court did not abuse its discretion in ordering disgorgement of all fees that Cotton paid. Thus, we affirm those portions of the summary judgment order in favor of Cotton. The public interest element of the CPA presents genuine issues of material fact. Thus, we reverse the attorney fee award under that statute.

In February 1996, Cotton asked Kronenberg to defend him against multiple charges of child rape. Kronenberg previously represented Cotton in other matters. The parties disagree about the facts surrounding the negotiations for the payment of fees for defense against the rape charges.

Viewing the evidence in the light most favorable to Kronenberg, as we must, the record shows that Cotton signed a fee agreement on March 6, 1996. That document, which Kronenberg prepared, states that attorney fees shall be charged at the rate of $140 per hour, and contains other provisions that we discuss later in this opinion. On that same date, Cotton also signed a statutory warranty deed to his "Desert Aire property" in which Kronenberg is named as the grantee. He also transferred to Kronenberg title to a mobile home located on the realty.

On March 9, 1996, Cotton signed another agreement that Kronenberg prepared. That document sets forth terms for a

nonrefundable fee for defense against the rape charges. It also estimates that fees "could be anywhere from $10,000 to $30,000." The agreement further provides for transfer of the Desert Aire property and the mobile home to Kronenberg in full satisfaction of all fees earned in the case. Within a week of this transfer Kronenberg recorded the deed, and within months sold the property for $42,000.

Several months after signing the March 9 agreement, Kronenberg met several times with the complaining witness for the rape charges. Kronenberg claims he met the witness to negotiate a settlement of potential civil claims against Cotton that might have arisen from the alleged conduct underlying the rape charges. According to the prosecutors in the rape case, the dealings[1] between Kronenberg and the witness impaired Kronenberg's ability to effectively question that witness during the approaching criminal trial. Based on that view, the prosecutors moved to have Kronenberg removed from the criminal case to protect Cotton's Sixth Amendment and due process rights. The trial court granted the motion.

Thereafter, new counsel for Cotton negotiated a plea and sentence recommendation with the prosecutor. New counsel also represented Cotton in further negotiations with the State to avoid potential additional charges of witness tampering and obstruction of justice based on Kronenberg's contact with the complaining witness. As a result of these negotiations, no criminal charges went to trial.

After Kronenberg denied Cotton's request for a refund of the unearned balance of the fees generated by the sale of the realty and mobile home described in the March 9, 1996 fee agreement, Cotton commenced this action. He stated four causes of action: legal malpractice, breach of fiduciary duty, violation of the CPA, and conversion. Cotton moved for partial summary judgment solely on the breach of fiduciary

---

[1] These dealings included several meetings with the complaining witness, a payment of cash to that witness, and the purchase for the witness of a one-way ticket to Oklahoma for departure prior to the scheduled criminal trial. The witness notified detectives of these dealings, and that led to prosecutors taking action.

duty and CPA claims. In response, Kronenberg moved for partial summary judgment, asking the court to dismiss the conversion claim. Following the court's grant of Cotton's motion and its dismissal of the conversion claim, he dismissed the legal malpractice claim.

Kronenberg appeals.

## BREACH OF FIDUCIARY DUTY

Relying heavily on *Hizey v. Carpenter*,[2] Kronenberg argues that the trial court improperly considered and applied the Rules of Professional Conduct (RPC) in determining that he breached his fiduciary duty to Cotton. Neither *Hizey* nor any other authority supports that proposition, and we reject it.

We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[4] A material fact is one upon which the outcome of the litigation depends.[5] Summary judgment is proper when reasonable minds could reach but one conclusion regarding the material facts.[6] We review questions of law de novo.[7] We also review de novo evidentiary rulings made in conjunction with a summary judgment motion.[8]

---

[2] 119 Wn.2d 251, 830 P.2d 646 (1992).

[3] CR 56(c).

[4] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[5] *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997).

[6] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[7] *Mains Farm Homeowners Ass'n*, 121 Wn.2d at 813.

[8] *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

■ In *Eriks v. Denver*,[9] our Supreme Court affirmed a trial court decision that an attorney breached his fiduciary duty to clients by violating the Code of Professional Responsibility (CPR),[10] the predecessor to the RPC. In that case, an attorney was hired to provide joint legal defense for all investors and promoters in a tax shelter scheme.[11] The investors later sued the attorney, alleging that he violated the CPR by representing both investors and promoters in the tax shelter and, therefore, breached his fiduciary duty to his clients. They also claimed counsel violated the CPA.

Four months later, in *Hizey*, the same court expressly preserved the propriety of using the CPRs or RPCs other than to impose malpractice liability.[12] Rather, the *Hizey* court held that a violation of the CPRs or the RPCs may not be used as evidence of legal malpractice.[13] Subsequent decisions adhere to the view that the RPCs may be considered in cases other than legal malpractice.[14]

Kronenberg also cites *Hetzel v. Parks*[15] to support his argument. *Hetzel* is distinguishable. In that case, Hetzel sued an attorney who did not represent him for legal malpractice. The attorney cashed Hetzel's endorsed settlement check for Hetzel's attorney by depositing it in his own trust account and giving Hetzel's attorney a check for the amount made out to the attorney. Hetzel's attorney cashed

---

[9] 118 Wn.2d 451, 824 P.2d 1207 (1992).

[10] *Eriks*, 118 Wn.2d at 461.

[11] *Eriks*, 118 Wn.2d at 453.

[12] *Hizey*, 119 Wn.2d at 264 (citing *Singleton v. Frost*, 108 Wn.2d 723, 742 P.2d 1224 (1987) (relying on disciplinary rule to determine reasonableness of attorney fees); *Eriks*, 118 Wn.2d 451 (holding violation of CPR is question of law, not fact); *Walsh v. Brousseau*, 62 Wn. App. 739, 815 P.2d 828 (1991) (holding contract for sale of law practice, which included duty on part of selling attorney to refer clients as consideration for the sale, violated RPC)).

[13] *Hizey*, 119 Wn.2d at 266.

[14] *See, e.g., Simburg, Ketter, Sheppard & Purdy, L.L.P. v. Olshan*, 97 Wn. App. 901, 909, 988 P.2d 467 (1999) ("In addition, attorney fee agreements that violate the Rules of Professional Conduct (RPC) are against public policy and are unenforceable by the courts.").

[15] 93 Wn. App. 929, 971 P.2d 115 (1999).

the check, but did not use the money on Hetzel's behalf or provide him with the proceeds.[16] Because the claim in *Hetzel* was for legal malpractice, that application of the *Hizey* holding is not useful here.

*Eriks*, not *Hizey*, controls. The trial court properly considered the RPCs to determine whether Kronenberg breached his fiduciary duty to Cotton in this action to recover attorney fees.

We next consider Kronenberg's evidentiary challenge to Cotton's summary judgment motion. Specifically, he objects to the declaration of an ethics expert.

■ CR 56(e) requires that the court consider only admissible evidence when considering a summary judgment motion. Professor John Strait is an expert witness whose declaration Cotton submitted in support of his summary judgment motion. The subject matter of the declaration was the fee agreement between the parties and related matters. It relies, in part, on provisions of the RPCs. In response to Kronenberg's motion to strike the declaration of Professor Strait, the trial court struck the legal conclusions stated in the declaration but nothing else.

Kronenberg claims this ruling was incorrect for two reasons. First, Professor Strait relied on the RPCs in his declaration. Second, he formulated his opinions by accepting as true the facts as Cotton presented them, and did not consider the evidence in the light most favorable to Kronenberg, the nonmoving party.

Kronenberg's first argument is unpersuasive for the reasons we have already stated in this opinion. *Eriks* permits courts to consider the RPCs in breach of fiduciary cases such as this.

■ Kronenberg's second argument is no more convincing. Neither the trial court's summary judgment order nor anything else in this record indicates that the trial court failed to apply the correct summary judgment standard of considering the evidence in the light most favorable to

---

[16] *Hetzel*, 93 Wn. App. at 933.

Kronenberg.[17] Whether Professor Strait followed the same standard is irrelevant. The facts or data upon which an expert bases an opinion or inference "may be those perceived by or made known to the expert at or before the hearing."[18] Nothing that we know of requires an expert's opinion to be based on the evidence introduced by the opposing party.

The court properly considered Professor Strait's declaration, having disregarded its legal conclusions.

Kronenberg next argues that genuine issues of material fact exist, barring summary judgment on the breach of fiduciary duty claim. We hold that there were no such issues.

The trial court articulated multiple bases for its ruling that Kronenberg breached his fiduciary duty to Cotton. We focus our analysis on the written fee agreements between the parties.

The two fee agreements for the defense of the rape charges, which Kronenberg authored and both he and Cotton signed, demonstrate there are no genuine issues of material fact. Cotton signed the first agreement on March 6, 1996. It expressly provides for a fee of $140 per hour for Kronenberg's services through trial. Significantly, Kronenberg's form states that the agreement is effective on signature.[19] Moreover, it contains a standard written integration clause.[20]

We note that the form agreement contains a paragraph that states, in part, that "[c]lient has paid $ Ø (see attached letter) on the _____ day of _____, 19__, as a *nonrefundable* first retainer for attorney fees and costs."

---

[17] *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 487, 834 P.2d 6 (1992).

[18] ER 703.

[19] Section VIII of the agreement states in part: "This agreement will take effect upon client signing it[.]"

[20] Section X of the agreement states: "This document constitutes the entire understanding and agreement between attorney and client. Any changes or modifications must be made in writing and be mutually signed."

While there is a factual dispute of whether Cotton was to pay a retainer as of the date of the March 6 agreement and how much, that dispute is not material for purposes of summary judgment. First, despite the above references to an "attached letter," the record contains no such letter dated as of March 6, the effective date of this fee agreement. Second, the entry of "$Ø" in the space for the retainer amount as of the March 6 effective date of the agreement cannot and has not been contradicted by parol evidence.

The second of the two fee agreements that Kronenberg authored buttresses our view that there are no genuine issues of material fact. This agreement is set forth in a letter to Cotton dated March 8, 1996, two days after the effective date of the hourly fee agreement. Cotton signed the latter agreement on March 9, three days after the effective date of the original fee agreement.

The March 9 agreement sets forth the terms and conditions by which Cotton conveyed to Kronenberg the Desert Aire realty and mobile home situated thereon. This transaction was the main focus of the trial court's ruling that Kronenberg had breached his fiduciary duty to his client.

Kronenberg contends that there are genuine issues of material fact as to the terms of the fee agreement, when they made it, and the intent of the parties when they signed it. This argument appears to suggest that there was only one fee agreement, the March 9 transaction. Relying on *Berg v. Hudesman*,[21] he contends that parol evidence is required to interpret these matters. We disagree.

The March 6 and March 9 fee agreements set forth the terms of compensation for each. In fact, Kronenberg's form used in the March 6 agreement contains a written integration clause. Each agreement establishes when it was effective. The form agreement expressly provided that it was effective on signature by the client on March 6, 1996. And Kronenberg does not argue that the March 9 agreement was effective any earlier than that date. *Berg* simply does

---

[21] 115 Wn.2d 657, 801 P.2d 222 (1990).

not provide a legal basis to modify or amend any of the written terms of the two fee agreements.[22]

Kronenberg further argues that the question of whether the March 9, 1996 agreement was a modification of the March 6, 1996 agreement presents a genuine issue of material fact. He is incorrect. This question is legal, not factual. It may be determined by reviewing the two fee agreements.

Citing *Ward v. Richards & Rossano, Inc.*,[23] he contends that the trial court should not have decided that issue. *Ward* is distinguishable. This court in *Ward* reversed a trial court's summary judgment against a client's claim that her attorneys improperly modified a fee agreement after representation began. But the reversal was based on the existence of a material fact—whether an accord and satisfaction had occurred. No one alleges that there is such an issue here. Accordingly, *Ward* has no bearing on this case.

We turn to the next inquiry under our summary judgment analysis: was Cotton entitled to judgment as a matter of law? We hold that he was.

Kronenberg argues that he did not breach his fiduciary duty to Cotton by the March 9 agreement. We disagree.

▮▮▮ Attorney fee agreements that violate the Rules of Professional Conduct (RPC) are against public policy and are unenforceable.[24] The question of whether an attorney's conduct violates the relevant Rules of Professional Conduct is a question of law.[25] Here, the rule at issue is RPC 1.8, which provides:

> A lawyer who is representing a client in a matter:

---

[22] *Berg*, 115 Wn.2d at 669 (Parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake.).

[23] 51 Wn. App. 423, 754 P.2d 120, *review denied*, 111 Wn.2d 1019 (1988).

[24] *Simburg*, 97 Wn. App. at 909.

[25] *Eriks*, 118 Wn.2d at 458.

(a) Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) *The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client* and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client consents thereto.[26]

Conceding in his opening brief that his acquisition of Cotton's Desert Aire property and mobile home must comply with the above rule,[27] Kronenberg argues that he fulfilled his fiduciary duty because the transaction and terms were "fair and reasonable" within the rule. For the following reasons, we conclude this argument is wholly unpersuasive.

First, Kronenberg accepted conveyance of Cotton's property in lieu of cash to take to trial the defense against the rape charges that the prosecutor filed.[28] The parties characterized the payment as "nonrefundable."[29] Yet Kronenberg never fulfilled his obligation under the agreement because the criminal court disqualified him before trial for improper contacts with the complaining witness. Despite his failure to fulfill his obligation to Cotton, Kronenberg refused the demand to return the unearned portion of the fee. Cotton was forced to raise $13,000 to pay

---

[26] (Emphasis added.)

[27] Kronenberg argues for the first time in his reply brief that RPC 1.8 does not apply to this transaction. But we decline to address this change of position first raised in his reply brief. RAP 10.3(c).

[28] In the March 9 agreement Kronenberg stated: " . . . I expect this to be a very acrimonious and heavily litigated matter."

[29] Many courts have determined that nonrefundable retainers are "unethical as a matter of professional responsibility and unenforceable as a matter of law." Lester Brickman & Lawrence A. Cunningham, *Game Theory and Nonrefundable Retainers: A Response to Professors Croson and Mnookin*, 2 HARV. NEGOT. L. REV. 69, 69 (1997), citing cases from many jurisdictions. We need not resolve in this case the question of whether such retainers are per se unreasonable.

new counsel to complete his defense on the rape charges and to avoid potential witness tampering charges relating to Kronenberg's conduct. For this reason alone, the trial court properly determined that the transaction was not "fair and reasonable" to the client within the meaning of RPC 1.8(a)(1).

Second, as the trial court determined, the fee amount was unreasonable under the circumstances.[30] Kronenberg's estimate for taking the matter through trial was $30,000.[31] Yet, shortly after entering into the agreement, Kronenberg sold the property for $42,000, 40 percent more than was reasonable under his own estimate. Particularly in view of the disqualification before trial, this transaction was not "fair and reasonable" within RPC 1.8(a)(1).[32]

Kronenberg argues that the fee was reasonable at the time the agreement was signed because Cotton did not have cash available to pay the $30,000 retainer. He claims Cotton would have been unable to hire counsel if Kronenberg had not accepted the Desert Aire property in lieu of cash. Kronenberg argues that because neither party knew exactly how much the property would sell for, the arrangement placed him at some risk that the property would be worth less than the $30,000 fee he was forgoing, so the higher sum he received for the property was not unfair.

Even if we were to accept Kronenberg's version of events, his focus is too narrow. There is nothing in RPC 1.8(a)(1) that restricts determination of whether a transaction is fair and reasonable to the client to the time when a fee agreement is signed. As Professor Hazard explains in his work on

[30] RPC 1.5(a) requires that a lawyer's fee be reasonable, and outlines factors to be considered in determining whether a fee is reasonable.

[31] In the March 9 agreement, Kronenberg estimated that the fees for taking the case to trial could "be anywhere from $10,000.00 to $30,000.00 in attorney time."

[32] Professor Hazard observes that "[A]lthough the 'business transaction' of making an ordinary fee agreement with a client is regulated by Rule 1.5 (fees) rather than by Rule 1.8(a), both rules are applicable when a lawyer contracts to receive all or part of her fee in the form [of] an interest in the client's venture." 1 GEOFFREY C. HAZARD, JR., W. WILLIAM HODES, THE LAW OF LAWYERING § 12.5 at 12-14 (3d ed. 2001).

ethics, a fee agreement that may seem fair to a client at the time that the agreement is signed must be reevaluated under the applicable rules when subsequent events alter the circumstances of the relationship. For example, if a client offers an attorney an interest in a fledgling company in exchange for legal representation, and the value of that share in the company unexpectedly increases greatly, the value of the fee may become unreasonably large in proportion to the work performed.[33]

■ We note that compliance with RPC 1.8 requires adherence to all of its three subparts. Because we hold that Kronenberg breached his fiduciary duty to Cotton by failing to comply with RPC 1.8(a)(1), we need not address subsections (a)(2) and (a)(3) of that rule. Accordingly, we view the factual disputes over the latter subsections as not material for summary judgment purposes.

There are no genuine issues of material fact on the question of breach of fiduciary duty. The fee agreement violated RPC 1.8 as a matter of law.

Kronenberg also objects to the court's conclusion as a matter of law that the March 9 agreement transferring title to the property was a modification of an existing attorney fee agreement without new consideration and therefore unenforceable. Because summary judgment was properly based on the violation of RPC 1.8(a)(1), we need not decide this issue.[34]

---

[33] HAZARD, *supra*, § 12.5.

[34] We note that our Supreme Court has held that any modification of a fee arrangement after an attorney-client relationship has been established is subject to " 'particular attention and scrutiny.' " *Perez v. Pappas*, 98 Wn.2d 835, 841, 659 P.2d 475 (1983) (quoting RONALD E. MALLEN & VICTOR B. LEVIT, LEGAL MALPRACTICE § 132, at 235 (2d ed. 1981). If a renegotiation after commencement of the attorney-client relationship results in greater compensation for the attorney than that under the initial agreement, courts may refuse to enforce the renegotiated fee unless it is supported by new consideration. *Perez*, 98 Wn.2d at 841. Kronenberg has not argued that the second agreement was supported by any new consideration.

## CPA

Kronenberg argues that the public interest impact of the fee transaction presents a genuine issue of material fact that precludes summary judgment on the Consumer Protection Act claim. We agree.

First, we address Kronenberg's evidentiary challenge. Kronenberg asserts that the trial court improperly considered evidence from his Washington State Bar Association (WSBA) disciplinary files. The grounds that he asserts on appeal are hearsay, undue prejudice,[35] and lack of relevance. We do not address the first two grounds, and reject the last.

Kronenberg was the subject of formal complaints to the WSBA by three clients other than Cotton. They alleged misconduct on his part regarding fee agreements and collection of fees. Below, Kronenberg opposed admission of these materials solely on the ground that they were irrelevant, not that they were either hearsay or unduly prejudicial. Because he did not preserve below any objections either on hearsay grounds or on the basis of ER 403, we will not address those grounds for the first time on appeal.[36]

lp;1q17, 18] We reject Kronenberg's argument that the disciplinary files are irrelevant and inadmissible. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.[37] Under *Hangman Ridge*, an issue is whether the finder of fact could find a likelihood that others have been or will be injured in the same fashion.[38] The evidence in the WSBA file is relevant to this issue.

---

[35] Appellant's Opening Br. at 33 n.11.

[36] *See* RAP 2.5(a): "Errors Raised for First Time on Review. The appellate court may refuse to review any claim of error which was not raised in the trial court." " 'An issue, theory or argument not presented at trial will not be considered on appeal,' " *Ryder v. Port of Seattle*, 50 Wn. App. 144, 150, 748 P.2d 243 (1987) (quoting *Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978)).

[37] ER 401.

[38] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986).

In *Hangman Ridge*, our Supreme Court articulated the five elements that a plaintiff must establish to prevail on a CPA claim: (1) an unfair or deceptive act or practice; (2) in the conduct of trade or commerce; (3) which impacts the public interest; (4) injury to the plaintiffs in their business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered.[39] Here, the parties dispute whether Cotton established that he was entitled to summary judgment on the third element of a CPA claim—a public interest showing. Whether the public has an interest in any given action is to be determined by the trier of fact from several factors, depending upon the context in which the alleged acts were committed.[40] The factors include: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?"[41] None of these factors is dispositive. Nor is it necessary that all of these factors be present. The factors "represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact."[42]

Here, the first factor is present—the act was committed in the course of Kronenberg's business. But the remaining factors either are not shown by this record or are disputed.

The parties also dispute whether Cotton has demonstrated that other clients have been injured in exactly the same fashion. While one of the complaints discussed in the WSBA disciplinary files arguably shows "the deceptive

---

[39] *Hangman Ridge*, 105 Wn.2d at 784-85.

[40] *Hangman Ridge*, 105 Wn.2d at 789-90. The court in *Hangman Ridge* stated that the question of whether the public has an interest is to be decided by the trier of fact. But *see Svendsen v. Stock*, 143 Wn.2d 546, 559, 23 P.3d 455 (2001).

[41] *Hangman Ridge*, 105 Wn.2d at 790-91.

[42] *Hangman Ridge*, 105 Wn.2d at 791.

manner and practice in which Kronenberg negotiated or collected his fee," that is a similarity to this case that the finder of fact should decide. The public interest element presents a disputed material issue of fact. Summary judgment on the CPA claim was improper.

## QUANTUM MERUIT

Kronenberg appears to argue that he is entitled to retain the portion of the fee he earned based on actual work he performed for the client. We disagree.

█ The question is what remedy was appropriate under the circumstances of this case of breach of fiduciary duty. The determination of a remedy after a finding of professional misconduct regarding fee agreements is within the discretion of the court.[43] We review for abuse of discretion.

█ "The general principle that a breach of ethical duties may result in denial or disgorgement of fees is well recognized."[44] It was entirely within the trial court's proper exercise of discretion to order complete disgorgement of the fees here.

## ATTORNEY FEES

The trial court awarded Cotton attorney fees because he prevailed on the CPA claim. Because we reverse the grant of summary judgment on the CPA claim, we also reverse the fee award. We also deny Cotton's request for fees on appeal. The award of fees, both for trial and this appeal, should abide the resolution at trial of the CPA claim.

We affirm the summary judgment order to the extent of the claim of breach of fiduciary duty and the order to disgorge the full amount of the fee. We reverse the order to

---

[43] *Eriks*, 118 Wn.2d at 463; *Kelly v. Foster*, 62 Wn. App. 150, 156, 813 P.2d 598, *review denied*, 118 Wn.2d 1001 (1991); *Simburg*, 97 Wn. App. at 910.

[44] *Eriks*, 118 Wn.2d at 462 (citations omitted).

the extent of the CPA claim and the award of attorney fees based on that claim, and remand for further proceedings.

BECKER, C.J., and KENNEDY, J., concur.

Reconsideration denied June 14, 2002.