[No. 68339-0-I.   Division One.   August 19, 2013.]

RAFEL LAW GROUP PLLC, *Respondent*, v. STACEY DEFOOR, *Appellant*.

*Roger A. Leishman* (of *Davis Wright Tremaine LLP*) and *Zachary Tomlinson* (of *Pacifica Law Group*), for appellant.

*Michael R. Caryl* (of *Michael Caryl PS*); and *Kelly P. Corr* and *Paul R. Raskin* (of *Corr Cronin Michelson Baum-gardner & Preece LLP*), for respondent.

¶1 DWYER, J. — Rule of Professional Conduct 1.8(a) prohibits an attorney from entering into a business trans-action with a client or acquiring an interest adverse to the client unless the attorney satisfies certain requirements designed to protect the client's interest. However, with one

exception not applicable herein, business transactions entered into with prospective clients or in anticipation of establishing an attorney-client relationship do not fall within the scope of the rule. Here, Stacey Defoor's attorney-client relationship with Rafel Law Group had not yet commenced at the time the parties entered into a settlement and reengagement agreement and promissory note. Thus, Rule of Professional Conduct 1.8(a) does not apply to the agreement and note. Accordingly, we affirm the trial court's order granting summary judgment in favor of Rafel Law Group and giving effect to the agreement and note.

¶2 In the unpublished portion of this opinion, we conclude that the trial court erred neither by granting Rafel Law Group partial summary judgment awarding attorney fees and costs nor by dismissing on summary judgment Defoor's claims for legal malpractice and breach of fiduciary duty.

## I[1]

¶3 Stacey Defoor's committed intimate relationship with Terry Defoor ended in 2006.[2] During their time together, Terry and Defoor developed G.W.C. Inc. (GWC), a successful real estate company. Following the termination of their relationship, Terry removed Defoor as an officer and registered agent of GWC and seized control of GWC and its assets. Defoor filed suit, seeking a determination of her committed intimate relationship with Terry and an equitable distribution of property. In June 2007, Defoor re-

---

[1] In her briefing, Defoor frequently cites to portions of her supplemental declaration. However, several portions of this pleading were ordered stricken by the trial court. Moreover, although Defoor assigns error to the trial court's order striking these portions, she states in a footnote that "it is unnecessary for this Court to reach the trial court's order" because "other evidence in the record establishes material factual disputes." Br. of Appellant at 41. In fact, Defoor fails to provide a basis for us to conclude that the trial court erred by striking portions of her supplemental declaration. Therefore, we affirm the trial court's order to strike and ignore Defoor's references to portions that were stricken.

[2] We will refer to Stacey Defoor, a party to this appeal, as Defoor. For clarity, we will refer to Terry Defoor as Terry.

quested that Anthony Rafel of Rafel Manville PLLC, now known as Rafel Law Group PLLC (RLG), substitute as her counsel in the suit. On June 29, 2007, Defoor signed a contingency fee agreement with RLG, specifying that RLG would be paid only upon Defoor's recovery in the underlying litigation.[3]

¶4 Disputes arose between Defoor and RLG regarding, in part, RLG's attorney fees and costs. As a result, shortly before trial, RLG moved for leave to withdraw as counsel for Defoor. The trial court granted RLG's motion on January 7, 2008. The trial court found good cause for RLG's withdrawal, which became effective on January 10, 2008.[4]

¶5 RLG filed several attorney's claims of lien in the underlying litigation. The firm filed its first attorney's claim of lien on December 26, 2007, prior to its withdrawal. This lien claimed 30 percent of the total amount recovered by Defoor in the action plus costs and, in the alternative, a lien in the amount of the value of RLG's services, totaling $475,921, plus costs totaling no less than $200,000. RLG filed several updated liens thereafter. By January 14, 2008, after RLG's withdrawal, its updated claimed lien was for 30 percent of Defoor's total recovery plus costs and, in the alternative, the value of RLG's services rendered to Defoor, totaling $505,000, plus costs in the amount of $270,000.

¶6 Following RLG's withdrawal, RLG and Defoor continued communicating with one another, and eventually began to negotiate RLG's reengagement as trial counsel for Defoor in the underlying litigation. Rafel informed Defoor that RLG would represent her again under these conditions: that she acknowledge the $775,000 in past fees and

---

[3] The agreement also contained a provision in which RLG promised to advance all costs throughout the litigation, for which Defoor would be ultimately liable.

[4] The trial court's order was conditioned on RLG taking steps to protect Defoor's interests, including continuing with ongoing mediation attempts at Defoor's option and turning over her files to substitute counsel should Defoor engage the services of a new attorney. The trial judge also continued the trial to March 3, 2008.

costs due for RLG's services performed on her behalf prior to its withdrawal; that she agree to pay attorney fees going forward on an hourly basis; and that she secure her obligations by signing a promissory note.[5] The parties thereafter reached an agreement memorialized in a settlement agreement and attorney reengagement agreement and promissory note.[6]

¶7 The Agreement included the following provisions:

4. Fees and Costs for Re-Engagement. Defoor shall pay RLG for its representation of Defoor pursuant to this Agreement, and shall reimburse RLG for any and all costs advanced by RLG on Defoor's behalf in the Litigation. . . . RLG's fees for services rendered pursuant to this Agreement shall be determined on an hourly fee basis using RLG's regular fee schedule for contingent litigation, rather than as a percentage of the recovery. The fees so computed shall be . . . treated as Additional Advances under the promissory note . . . . Defoor shall be obligated to pay said fees regardless of the outcome in the Litigation or Defoor's recovery therein. In addition, RLG will advance the costs needed to bring the Litigation to trial. . . . Defoor agrees to reimburse RLG for all costs advanced, regardless of the outcome in the Litigation or Defoor's recovery therein, and the amounts so advanced shall be treated as Additional Advances under the promissory note.

5. Lien. Defoor hereby grants RLG a lien for the total amount of the past fees and costs for which she is obligated ($775,000), plus the amount of additional fees and costs incurred by or on behalf of Defoor pursuant to this Agreement. This lien shall apply and be enforceable against any recovery by Defoor in the Litigation and any assets of Defoor, whether awarded in the Litigation, obtained in settlement, or otherwise.

---

[5] The parties refer to services rendered and costs incurred on behalf of Defoor before RLG's withdrawal as "Matter 1." Likewise, the parties refer to services rendered and costs incurred after RLG's reengagement as "Matter 2." This nomenclature is adopted herein.

[6] The settlement and reengagement agreement and promissory note are hereafter referred to as "Agreement" and "Note," respectively.

¶8  In addition, the Note designated the sum of $775,000 as being owed to RLG by Defoor, accompanied by interest on the unpaid principal accruing as of January 10, 2008.[7]

¶9  Before she signed the Agreement and Note, Defoor sought the advice of the attorneys who had first represented her in the underlying litigation. After reviewing the terms of the Agreement and Note, these attorneys recommended against Defoor's reengagement with RLG. Notwithstanding this advice, Defoor signed the Agreement and Note on February 14, 2008, while in Florida.[8] She did so in the presence of witnesses and a notary public.

¶10  RLG reappeared as counsel for Defoor on February 20, 2008. The trial of the dissolution dispute took place over 19 days in March 2008. RLG retained the services of Paul Sutphen to testify as an expert witness at trial. Sutphen is a forensic certified public accountant. He created a balance sheet and supporting schedule showing the parties' assets and liabilities as they existed around the time of separation.[9] Sutphen testified at trial and presented the balance sheet to the trial court.

¶11  RLG also presented to the trial court evidence of proceeds that GWC received from pending projects after Defoor and Terry separated, including a $1,050,000 assignment fee that was paid to GWC in October 2007. RLG did not, however, inform the trial court that Terry had transferred $950,000 of the $1,050,000 Camwest Development assignment fee to a new UBS bank account immediately

---

[7] The Note required that Defoor pay the principal and interest upon the earliest occurrence of any of the following events: (a) receipt of funds by Defoor in connection with the underlying litigation, (b) the sale by Defoor of any residential properties in which Defoor had a title interest, or (c) June 15, 2008.

[8] These attorneys memorialized their advice in a letter to Defoor, which was received by her several days after she signed the Agreement and Note. There is no indication in the record, however, that Defoor's receipt of the letter motivated her to attempt to either rescind the agreement or modify its terms.

[9] The balance sheet identified bank accounts, real properties, boats, and other assets that existed at the time of the Defoor separation, which were held by Defoor, Terry, and GWC.

after he had received the fee. RLG did not do so because it was unaware that Terry had transferred the money to a new account, despite its efforts to identify all community assets.[10]

¶12 Following trial, the trial court distributed to the parties draft findings of fact and a draft property award, which did not specifically award Defoor the $1,050,000 Camwest assignment fee. As a result, RLG submitted to the trial court a redline of the draft findings of fact and property award, in which RLG identified the $1,050,000 assignment fee and requested that the trial court allocate half of those funds to Defoor.

¶13 On November 20, 2008, the trial court entered judgment in the underlying litigation. Although the trial court's award to Defoor was substantially in her favor,[11] the judgment did not specifically identify the $1,050,000 assignment fee. However, Defoor was awarded substantial interest in contract rights to property and, significantly, half of any undisclosed assets. Moreover, the trial court awarded all GWC liabilities to Terry. Terry

---

[10] RLG's interrogatories requested identification of all bank accounts. In response to RLG's interrogatories, Terry and GWC failed to identify the new UBS bank account containing the $950,000 portion of the $1,050,000 Camwest assignment fee. RLG also issued several document subpoenas in an effort to identify all of the community assets. One of these subpoenas was to UBS in Montana, where the new UBS account was opened. UBS disclosed the existence of two accounts, which did not contain the Camwest assignment fee, and stated that it had not found other accounts in the name of Defoor or GWC.

[11] The trial court's award included the following: the cash sum of $2,223,368.60; interests in real property valued by the court at over $2 million; three Porsche vehicles valued at $140,000 total; a boat valued at $100,000; jewelry valued at $46,400; and certain contract rights to which the court did not assign a cash value.

thereafter appealed the trial court's ruling[12] and filed for bankruptcy.[13]

¶14 In accordance with its terms, the Note became due and payable on June 15, 2008. RLG had issued regular invoices to Defoor since March 2008 for the amount of principal and interest owing on the $775,000 sum incurred for Matter 1, before RLG's withdrawal, as well as for services rendered and costs advanced for Matter 2, since RLG's reengagement. Because no payment had been made, on June 22, 2010, RLG brought suit against Defoor, seeking compensation for attorney fees and costs incurred on behalf of Defoor, pursuant to the Agreement and Note.

¶15 Defoor counterclaimed, asserting breach of fiduciary duty and legal malpractice. The trial court dismissed these claims on summary judgment, finding that Defoor presented no evidence to support her counterclaims. Moreover, in holding enforceable the Agreement and Note, the trial court granted RLG's motion for summary judgment regarding the Agreement. Contrary to Defoor's assertion that RLG violated rule 1.8 of the Rules of Professional Conduct (RPC), the trial court found that "Ms. Defoor was not a client at the time the subject Agreement was negotiated and signed. Thus, RPC 1.8 does not apply as a matter of law."

¶16 The trial court additionally granted RLG's motion for partial summary judgment on attorney fees and costs, awarding RLG $497,117.50 for attorney fees for Matter 1 and $405,860.42 for attorney fees for Matter 2, totaling

---

[12] The decision on appeal is *Defoor v. Defoor*, noted at 157 Wn. App. 1033 (2010). We reversed in part, holding that the trial court counted twice the proceeds from the sale of the Defoors' Costa Rica condominium. We also remanded for further inquiry into whether the trial court allocated to Terry a line of credit debt as part of its fair and equitable property distribution. Following proceedings on remand, Terry, GWC, and Merrilee A. MacLean, the chapter 7 bankruptcy trustee for Terry's estate, appealed. The unpublished consolidated decision on appeal is *Defoor v. Defoor*, noted at 174 Wn. App. 1014, 2013 WL 1164772, 2013 Wash. App. LEXIS 602.

[13] At the time of this appeal, Defoor had not recovered any cash as the result of the award against Terry.

$902,977.92.[14] In that same order, the trial court awarded RLG judgment for costs RLG incurred and paid on behalf of Defoor in the amount of $383,184.29. The trial court thereafter awarded RLG prejudgment interest in the amount of $490,563.81.

¶17 Defoor appeals.[15]

## II

¶18 Defoor's principal contention is that the Agreement and Note are void as a matter of law because RLG failed to comply with RPC 1.8(a). This argument is premised on the assertion that RPC 1.8(a) applies to the Agreement and Note. This is so, Defoor avers, because (1) RPC 1.8 governs transactions entered into concurrently with the attorney's engagement, during the formation of the attorney-client relationship, and (2) the Agreement and Note involved a "business transaction" and a "security . . . interest" that implicate RPC 1.8(a). We disagree.

¶19 This court's review of orders granting or denying summary judgment is de novo, and we engage in the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A "material fact" is one upon which the outcome of the litigation depends. *Cotton v. Kronenberg*, 111 Wn. App. 258, 264, 44 P.3d 878 (2002) (citing *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997)). All

---

[14] The trial court made an arithmetic error and entered judgment in the amount of $902,978.22.

[15] RLG submitted a motion requesting that this court, pursuant to RAP 10.3(c) and RAP 10.7, strike Defoor's reply brief or, in the alternative, permit RLG to file a response to the reply brief pursuant to RAP 10.1(h). RLG argues that Defoor's reply brief contains "new arguments, authorities and evidence." Defoor's reply brief substantially comports with RAP 10.3(c) insofar as it responds to issues raised in RLG's respondent's brief. Accordingly, we deny RLG's motion to strike Defoor's reply brief.

219

facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

¶20 Whether an attorney's conduct violated the RPC is a question of law. *Eriks v. Denver*, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992). Business transactions within the scope of RPC 1.8(a) are considered prima facie fraudulent. *In re Disciplinary Proceeding Against Holcomb*, 162 Wn.2d 563, 580, 173 P.3d 898 (2007); *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 704, 826 P.2d 186 (1992) (citing *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983)). Attorney fee agreements that violate the Rules of Professional Conduct are against public policy and are therefore unenforceable. *Simburg, Ketter, Sheppard & Purdy, LLP v. Olshan*, 109 Wn. App. 436, 445, 988 P.2d 467, 33 P.3d 742 (1999).

¶21 RPC 1.8(a) governs business transactions between lawyers and clients. It prohibits an attorney from participating in business transactions with a client unless the attorney satisfies certain disclosure requirements designed to protect the client's interests. In pertinent part, RPC 1.8 provides:

CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client.[16]

---

[16] Defoor does not challenge RLG's compliance with RPC 1.8(a)(2) and (a)(3). RPC 1.8(a)(2) prescribes that the client be advised "in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction." RPC 1.8(a)(3) requires that the client give "informed consent, in a writing signed by the client, to the essential terms of the

¶22 Defoor asserts that RPC 1.8(a) applies to the Agreement and Note because they were entered into concurrently with the new attorney-client engagement. Defoor's contention is mistaken. RPC 1.8(a) governs transactions entered into during the course of the attorney-client relationship. The rule does not apply to transactions entered into prior to the creation of the attorney-client relationship or those agreed upon during the relationship's formation.[17] Such application is made clear by the plain language of RPC 1.8(a), which expressly prohibits an attorney from entering into "a business transaction with a client." The language of the rule makes no reference to transactions with prospective clients or transactions entered into in anticipation of representation. The rule itself is thus limited to conflicts of interests with *current* clients. Given that this rule was enacted by our Supreme Court, which is charged with rule oversight of attorney discipline and regulatory matters, *In re Disciplinary Proceeding Against Greenlee*, 158 Wn.2d 259, 266-67, 143 P.3d 807 (2006), it would be improper for us to import language into the rule to create a broader application than that warranted by the text of the rule.

¶23 Moreover, the structure and organization of the rules provide further indication that RPC 1.8 does not apply to transactions with prospective clients or those entered into in anticipation of formation of an attorney-client relationship. The rules are organized and categorized, in part, according to an attorney's duties to prospective, current, and former clients. In particular, the heading of RPC 1.7 is entitled "CONFLICT OF INTEREST: CURRENT CLIENTS" and thus concerns a lawyer's duties to current clients. RPC 1.8 sets forth the obligations owing to current clients, as demonstrated by its heading, "CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES." Further, RPC 1.9 sets forth "DUTIES TO FORMER CLIENTS," while RPC 1.18 specifies "DUTIES TO PROSPECTIVE

---

transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction."

[17] The sole exception to this general rule is discussed *infra*.

CLIENT[s]." Thus, the structure of the rules is consistent with the conclusion that RPC 1.8(a) does not apply to transactions entered into with prospective clients.

¶24 In addition, the principle underlying RPC 1.8(a) is consistent with our determination. The official comments to the rules are instructive in this regard. Comment 1 explains that "[a] lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client." RPC 1.8 cmt. 1. RPC 1.8(a) is therefore designed to prevent an attorney, who likely benefits from a considerable advantage when dealing with a client, from exploiting the attorney-client relationship, given that the client should be free to repose a great deal of trust and confidence in the attorney. Conversely, when an attorney negotiates with a prospective client the terms of the initial fee agreement, the attorney-client relationship has not yet been established. Thus, the attorney does not owe the same duty that he or she owes to a current client. If the prospective client is dissatisfied with the terms of the proposed engagement agreement, the prospective client is free to decline representation or seek representation elsewhere.

¶25 Here, it is undisputed that at the time Defoor and RLG reached agreement on the Agreement and Note, an attorney-client relationship had not yet commenced. To the contrary, their previous relationship had been terminated, as evident by the trial court's order granting RLG's leave to withdraw. At the time the Agreement and Note were negotiated, Defoor was not a "current client" of RLG for purposes of RPC 1.8(a).

¶26 Notwithstanding that Defoor was not a current client of RLG at the time the Agreement and Note were negotiated, Defoor insists that RPC 1.8(a) applies because the Agreement grants a lien to RLG against "any assets of Defoor" securing payments due for work on Matters 1 and 2.

This grant of a security interest, Defoor asserts, brings the Agreement within the scope of RPC 1.8(a). This is so, Defoor contends, because an official comment to RPC 1.8(a) states that the rule "does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property *as payment* of all or part of a fee." RPC 1.8 cmt. 1 (emphasis added). Defoor maintains that the security interest granted in the Agreement constitutes "payment" within the meaning of the comment. Thus, Defoor asserts, RPC 1.8(a) applies to the Agreement. We disagree.

¶27 First, the Note securing payment for $775,000—as settlement for Defoor's obligation to RLG for its services and costs for Matter 1—constitutes nothing other than an accord, the satisfaction of which has not been performed by Defoor because she has not paid the amount owed.[18] Because of this and the absence of an attorney-client relationship at the time the Agreement and Note were negotiated, RPC 1.8 is inapplicable to the grant of a lien securing payment of fees for work done on Matter 1.

¶28 Second, contrary to Defoor's contention, the cited lien provision does not constitute payment for RLG's legal services. Comment 1 pertains to circumstances in which an attorney acquires an interest in the property of a client *as payment* of fees, such as a total or partial ownership in a client's business. It does not pertain to a security interest designed to protect the attorney against *nonpayment*.

¶29 A case relied upon by Defoor is actually consonant with this view. *See Holmes v. Loveless*, 122 Wn. App. 470, 94 P.3d 338 (2004). Attorney Holmes and his law firm began

---

[18] *Black's Law Dictionary* defines an "accord" as "[a]n offer to give or to accept a stipulated performance in the future to satisfy an obligor's existing duty, together with an acceptance of that offer. [ ] The performance becomes what is known as a *satisfaction*." BLACK'S LAW DICTIONARY 18 (9th ed. 2009); *see Dep't of Fisheries v. J-Z Sales Corp.*, 25 Wn. App. 671, 676, 610 P.2d 390 (1980).

performing legal services for Loveless in 1970. Two years later, Loveless and his business partner, Tollefson, launched a joint venture. In 1972, Holmes and his law firm entered into a fee agreement with the joint venture in which the law firm, in exchange for charging a reduced hourly fee for work performed, would receive five percent of the joint venture's cash distributions.[19] *Holmes*, 122 Wn. App. at 473. The court concluded that RPC 1.8(a) and RPC 1.5(a) governed the 1972 agreement because the law firm's "compensation was directly linked to the joint venture's profits." *Holmes*, 122 Wn. App. at 475-76.

¶30 In contrast to *Holmes*, here, RLG obtained no direct interest in Defoor's property as payment for the work it performed. Instead, the Agreement stipulated that payment would be calculated on an hourly basis for services performed after RLG's reengagement. RLG billed Defoor monthly for services rendered on Matter 2; all amounts unpaid were added to the sum due on the promissory note. The value of the compensation earned by RLG was measured by its rates and the hours it worked. It was neither increased nor decreased by the value of the property to which a lien attached, securing unpaid amounts due. The grant of an interest to secure payment is not the same as payment.

¶31 Similarly unavailing is Defoor's reliance on *Cotton*, 111 Wn. App. 258, for what she claims reflects long-standing Washington precedent that RPC 1.8(a) applies to business transactions that are included as part of the terms of the lawyer's engagement. In fact, *Cotton* set forth no such rule.

¶32 Courts have applied RPC 1.8(a) to modifications or renegotiations of fee arrangements made *during* the repre-

---

[19] Although the facts of the case clearly indicate that Loveless was represented by Holmes and his law firm two years prior to the joint venture's fee agreement with the firm, the court did not expressly address whether Loveless, Tollefson, or the joint venture were "current clients" at the time the joint venture agreement or the fee agreement were signed.

sentation. "[A]ny modification of a fee arrangement after an attorney-client relationship has been established is subject to 'particular attention and scrutiny.' " *Cotton*, 111 Wn. App. at 272 n.34 (internal quotation marks omitted) (quoting *Perez v. Pappas*, 98 Wn.2d 835, 841, 659 P.2d 475 (1983)). "[I]f the renegotiation results in greater compensation than counsel was entitled to under the original agreement, courts may refuse to enforce the renegotiation unless it is supported by new consideration." *Perez*, 98 Wn.2d at 841.

¶33 *Cotton* involved the modification of a fee agreement with an existing client. In that case, we determined that the second fee agreement, requiring the exchange of real property for legal services, violated RPC 1.8(a). 111 Wn. App. at 262. The second fee agreement, signed a few days after the first, transferred Cotton's real property and mobile home to his attorney, Kronenberg, in full satisfaction of Kronenberg's fees earned in the case. The second fee agreement was entered into after Kronenberg and Cotton's attorney-client relationship had commenced. The challenged fee agreement superseded the initial fee agreement.

¶34 Nothing like that happened here. The Agreement and Note were negotiated before RLG and Defoor reestablished an attorney-client relationship. The court had explicitly permitted and supervised the severing of the first attorney-client relationship. Because an attorney-client relationship was nonexistent at the time the Agreement and Note were negotiated and entered into, Defoor's reliance on *Cotton* is misplaced.

¶35 Defoor's next contention involves a theory that she first presented at oral argument in this court—a theory that was previously addressed neither in her briefing on appeal nor in her pleadings in the trial court. She asserts that even after RLG's withdrawal and before its reengagement, an attorney-client relationship continued to exist, thereby subjecting the Agreement and Note to RPC 1.8(a). The existence of this relationship, Defoor argues, is reflected in RLG's billing records, which indicate that RLG performed

legal services on behalf of Defoor in preparation for their reengagement.[20] Further, following appellate oral argument, Defoor submitted a statement of additional authorities, in which she argues that "Rafel Law Group's provision of legal services between January 11 and February 14, 2008 creates at least an issue of fact regarding the existence of an attorney-client relationship."

¶36 We decline to evaluate the merits of this tardily raised argument. In reviewing an order granting or denying a motion for summary judgment, we "will consider only evidence and issues called to the attention of the trial court." RAP 9.12. Defoor's contention was not raised in her pleadings to the trial court, thus denying RLG the opportunity to offer evidence or argument designed to rebut the contention. Nor did Defoor address this theory in her briefing on appeal, similarly denying RLG the opportunity to respond. Finally, Defoor sought to argue her case in her statement of additional authorities, in contravention of RAP 10.8. Defoor's contention, raised for the first time on appeal, is not properly before this court. It will not be further addressed.[21]

¶37 The terms of the Agreement and Note do not fall within the scope of RPC 1.8(a). Defoor was not a current client at the time Defoor and RLG contracted for the Agreement and Note. In addition, the lien securing an interest in Defoor's assets does not fall within official

---

[20] Such services included drafting the Agreement and Note, communicating with Defoor regarding the possibility of reengagement, and serving and filing an updated attorney's lien claim. As discussed *infra*, Rafel later removed some of these billing entries, excluding the work performed from the list of work from which RLG calculated its damages stemming from Defoor's breach of the Agreement.

[21] RLG filed a motion to strike Defoor's statement of additional authorities, noting that the statement violates RAP 10.8. The rule provides that a statement of additional authorities "should not contain argument, but should identify the issue for which each authority is offered." RAP 10.8. RLG is correct that Defoor improperly presented argument in her statement of additional authorities. However, because we decline to consider Defoor's new argument for the reasons set forth above, we need not rule on RLG's motion to strike.

comment 1's exception to the general rule. The trial court did not err in giving effect to the Agreement and Note.[22]

¶38 The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.

LAU, J., concurs.

¶39 SCHINDLER, J. (concurring) — Because the limited case law interpreting RPC 1.8(a) addresses application of the rule only to current clients, I agree with the conclusion that RPC 1.8(a) does not apply. But I write separately to urge the Supreme Court to address whether RPC 1.8(a) should apply to a security interest acquired during the negotiation of the initial fee agreement. While the court has not addressed the application of RPC 1.8(a) to the acquisition of a security interest during negotiation of a fee agreement, recent Washington State Bar Association (WSBA) Advisory Opinion 2209, "Lawyer Taking Security Interest in Client Property" (2012), states that best practice would include compliance with the requirements of RPC 1.8(a) in those circumstances.

---

[22] RLG contends that Defoor should be estopped from asserting her claims because she fraudulently induced RLG to enter into the Agreement. In support of this argument, RLG points to Defoor's deposition, in which she testified that when she signed the Agreement, she did not, in fact, agree to its terms and that her acknowledgement of some of its terms was "totally false." Defoor also testified that at the time she signed the Agreement, she had plans to later bring suit against Rafel, contesting her duty to pay legal fees. Although she discussed this intention with her former attorney and Terry's counsel, she did not make Rafel aware of her plan because she believed he would not have accepted representation. It appears, therefore, that Defoor had no intention to honor the Agreement and Note at the time she signed them. However, because the Agreement is valid and enforceable, we need not address this claim.

Similarly, the trial court did not adjudicate RLG's amended claims for common law fraud and fraudulent inducement. After the trial court granted RLG's motion for summary judgment re: reengagement agreement and RLG's motion for summary judgment dismissing negligence, breach of fiduciary duty, and other damages claims, RLG sought leave to amend its complaint to withdraw its claims for common law fraud and fraudulent inducement. The trial court granted RLG's motion to dismiss the fraud claims without prejudice.

¶40 In WSBA Advisory Opinion 2209, the WSBA Rules of Professional Conduct Committee (Committee) recognizes RPC 1.8(a) applies only to current clients but notes that the Supreme Court has not squarely addressed whether RPC 1.8(a) applies to the negotiation of a security interest as part of the initial fee agreement. Based on authority from other jurisdictions and American Bar Association (ABA) Formal Opinion 02-427, "Contractual Security Interest Obtained by a Lawyer to Secure Payment of a Fee" (2002), the Committee states that best practice would include compliance with the requirements of RPC 1.8(a) when acquiring a security interest, such as a lien, during the negotiation of the initial fee agreement. WSBA Advisory Op. 2209.

¶41 WSBA Advisory Opinion 2209 states, in pertinent part:

> The negotiation of the terms of the initial fee agreement is *not generally considered a "business transaction" with a client.* This is because at the time of the negotiation of the initial fee agreement, the attorney-client relationship is not yet formed. Thus the attorney does not owe the same duty to a prospective client as she would to an existing client. Additionally, the prospective client can walk away from the transaction. On the other hand, *any subsequent modification of the fee agreement is generally considered a business transaction.* See Comment [1] to RPC 1.8 ("[RPC 1.8] does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of a fee.").

> However, there is some authority from other jurisdictions that RPC 1.8(a) applies even to security interests acquired during the negotiation of the initial fee agreement. See ABA Formal Opinion 02-427. Thus, it is the Committee's opinion that the best practice would include compliance with RPC 1.8(a).

> . . . .

> Under RPC 1.8(i), an attorney may accept a contractual security interest in a client's real property. Washington courts

have not squarely addressed the application of RPC 1.8(a) to the acceptance of a security interest during the initial negotiation of the fee agreement, but the careful attorney would comply with its provisions. If the security interest is created pursuant to a modified fee agreement, the attorney must comply with RPC 1.8(a).[23]

(First and second alterations in original.)

¶42 ABA Formal Opinion 02-427 states that "[a] lawyer who acquires a contractual security interest in a client's property to secure payment of fees earned *or to be earned* must comply with [ABA] Model Rule 1.8(a)."[24] ABA Formal Opinion 02-427 also states that transactions to secure a fee are "regarded in most state and local bar opinions and court decisions as . . . business transaction[s]" subject to the disclosure requirements of ABA Model Rule 1.8(a).[25]

¶43 Here, the agreement provides, in pertinent part:

5. <u>Lien</u>. Defoor hereby grants RLG a lien for the total amount of the past fees and costs for which she is obligated ($775,000), plus the amount of additional fees and costs incurred by or on

---

[23] *See also* WSBA Advisory Op. 2178, "Client signing judgment for estimated attorney's fees in dissolution case" (2008) (A lawyer violates RPC 1.8(a) by obtaining a stipulated judgment to secure anticipated fees in advance of undertaking representation. The Committee "question[ed] whether it would be proper under any circumstances to obtain a negotiable promissory note for a sum certain from a prospective client prior to work being performed or fees being earned."); WSBA Advisory Op. 1044, "Conflict of interest; receipt of deed of trust to secure future fees" (1986) (Where a law firm "received a deed of trust and promissory note to secure legal fees for *future* representation," the law firm was required to comply with RPC 1.8(a) "if [the deed and note] were a security interest." (emphasis added)).

[24] (Emphasis added.)

[25] ABA Formal Opinion 02-427 states, in pertinent part:

**Considerations in Securing a Fee Obligation**
Most state and local bar opinions and court decisions have looked to [ABA] Model Rule 1.8(a) when considering this issue. That rule applies to business transactions with clients. Although a fee agreement with a client is not generally considered to constitute a business transaction, the transaction with a client to secure a fee is itself regarded in most state and local bar opinions and court decisions as a business transaction. The [ABA] Committee [on Ethics and Professional Responsibility] agrees.

(Footnotes omitted.)

behalf of Defoor pursuant to this Agreement. *This lien shall apply and be enforceable against any recovery by Defoor in the Litigation and any assets of Defoor, whether awarded in the Litigation, obtained in settlement, or otherwise.* Any payment and/or transfer of property to Defoor or for Defoor's benefit in the Litigation shall be paid or given, as the case may be, to RLG in trust for Defoor, and RLG may use said funds or property to discharge, in whole or in part, any amounts due to RLG under this Agreement or the Promissory Note.[26]

¶44 RPC 1.8(i) prohibits a lawyer from acquiring a lien "to secure the lawyer's fee or expenses." RPC 1.8(i)(1).[27] Comment 16 to RPC 1.8 states that where "a lawyer acquires by contract a security interest in property other than that recovered through the lawyer's efforts in the litigation, such an acquisition is a business or financial transaction with a client and is governed by the requirements of paragraph (a)." RPC 1.8(a) requires a lawyer to meet strict requirements before entering into a business transaction with a client or acquiring "an ownership, possessory, security or other pecuniary interest adverse to a client."

¶45 If RPC 1.8(a) applied to the Agreement, there is no question that the disclosure requirements were not met.[28]

---

[26] (Emphasis added.)

[27] RPC 1.8(i) states:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

   (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and
   (2) contract with a client for a reasonable contingent fee in a civil case.

[28] RLG did not establish:

(1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger.

*In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983).

A fee agreement that violates RPC 1.8(a) is against public policy and unenforceable. *Valley/50th Ave., LLC v. Stewart,* 159 Wn.2d 736, 743, 153 P.3d 186 (2007).

Review denied at 179 Wn.2d 1011 (2014).