IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RUHUL KAYSHEL, SCOTT BATTAGLIOLI, and STEPHONE MITCHELL, on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>CHAE, INC., dba ACURA OF SEATTLE, HO, INC., dba LEXUS OF BELLEVUE and LEXUS OF TACOMA AT FIFE, MICHAEL O'BRIEN ENTERPRISES, INC., dba TOYOTA OF KIRKLAND and SCION OF KIRKLAND, OB, INC., dba JAGUAR OF TACOMA, LAND ROVER OF TACOMA, VOLVO OF TACOMA, and VOLVO OF TACOMA AT FIFE, OB KIRKLAND, INC., dba VOLKSWAGEN OF KIRKLAND, OB MARYSVILLE, INC., dba HONDA OF MARYSVILLE, OB RENTON, INC., dba SCION OF RENTON and TOYOTA OF RENTON, Washington corporations, aka, O'BRIEN AUTO GROUP,<br><br>      Defendants.<br><br>HARISH BHARTI,<br><br>      Appellant,<br><br>  v.<br><br>STEPHEN TELLER,<br><br>      Respondent. | No. 80580-1-I<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |

Harish Bharti has filed a motion for reconsideration of the opinion filed on April 12, 2021. Stephen Teller has not filed a response. The court has determined that the motion for reconsideration shall be granted. The opinion shall be withdrawn, and a substitute opinion shall be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; and it is further

ORDERED that the opinion filed on April 12, 2021 is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_____ Coburn, J.

_____ Mann, C.J.        _____ Dwyer, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

RUHUL KAYSHEL, SCOTT
BATTAGLIOLI, and STEPHONE
MITCHELL, on behalf of themselves
and others similarly situated,

                  Appellants,

      v.

CHAE, INC., dba ACURA OF
SEATTLE, HO, INC., dba LEXUS OF
BELLEVUE and LEXUS OF TACOMA
AT FIFE, MICHAEL O'BRIEN
ENTERPRISES, INC., dba TOYOTA OF
KIRKLAND and SCION OF KIRKLAND,
OB, INC., dba JAGUAR OF TACOMA,
LAND ROVER OF TACOMA, VOLVO
OF TACOMA, and VOLVO OF
TACOMA AT FIFE, OB KIRKLAND,
INC., dba VOLKSWAGEN
OF KIRKLAND, OB MARYSVILLE,
INC., dba HONDA OF MARYSVILLE,
OB RENTON, INC., dba SCION OF
RENTON and TOYOTA OF RENTON,
Washington corporations, aka,
O'BRIEN AUTO GROUP,

                  Respondents.

No. 80580-1-I

DIVISION ONE

PUBLISHED OPINION

COBURN, J. — Two attorneys, Harish Bharti and Stephen Teller, associated to represent Ruhul Kayshel on a discrimination case and a wage and contract class action case against Kayshel's employer. Bharti and Teller entered into a one-page, handwritten fee division agreement. Teller withdrew prior to the class case

Citations and pin cites are based on the Westlaw online version of the cited material.

reaching settlement. After the class case settled, Bharti and Teller disputed how to share their portion of the court-approved contingency fees in the class case. The trial court disagreed with Bharti that Teller should receive nothing and awarded Teller a percentage of the fees based on the fee division agreement and Bharti's promises to Teller that Bharti would honor that agreement. Because the fee division agreement fails to satisfy the requirements of the Rules of Professional Conduct (RPC) 1.5(e)(1)(ii), we reverse and remand.

## FACTS

On September 9, 2014, Kayshel retained Teller, principal of Teller & Associates PLLC as his attorney against his former employer O'Brien Auto Group. Teller initiated two lawsuits. First, Teller filed a race discrimination suit on behalf of Kayshel, individually. Second, on October 6, 2014, Teller filed a wage and contract suit on behalf of Kayshel and a putative class of employees. Kayshel and Teller signed a legal services agreement that addressed associating with counsel.

> Attorneys reserve the right to consult with and associate other attorneys in this matter without additional expense to client. Client consents to such association and agrees not to unreasonably withhold approval of a division of attorneys' fees as may be agreed upon between associated counsel, provided that any such association will not increase attorneys' fees under paragraph 1.

The agreement also provided for a scenario in which Kayshel discharged Teller or Teller withdrew:

> If client discharges attorneys without good cause, or if attorneys have grounds to withdraw for cause (e.g., dishonesty of client, failure to follow advice of attorneys, or the like), client agrees to pay

2

> attorneys a reasonable attorney fee and any non-reimbursed costs. The attorney fee shall be, at attorney's option, either (a) an hourly fee for the attorney time expended . . ; (b) the contingency percentage computed from the last settlement offer; or (c) a pro-rata portion of the contingent fee ultimately recovered based on relative contributions to the case by attorneys and any successor law firm as determined by Washington law and the factors set out in the Rule of Professional Conduct 1.5 (a).

Teller initially associated with the law firm Terrell, Marshall, Daudt & Willie PLLC as class co-counsel. After Terrell encouraged early mediation, Kayshel sought advice from attorney Bharti, principal of Bharti Law Group. Bharti then substituted in for the Terrell firm who withdrew. Bharti reached out to law firm Friedman Rubin as class cocounsel.[1]

On April 18, 2015, more than half a year after Kayshel retained Teller, Teller and Bharti met over breakfast and signed a one-page, handwritten fee division agreement (Bharti/Teller Agreement) on both the discrimination case and the class case. The two agreed that Bharti would receive 35 percent and Teller would receive 65 percent of the contingent legal fees in the discrimination case and both would split costs. In the class case, Bharti would receive 23 percent and Teller would receive 12 percent of the contingent legal fees. The Bharti/Teller Agreement included only information regarding the percentage by which Bharti and Teller were to divide the contingency fees. After the meeting, Bharti e-mailed Teller memorializing the contents of the agreement. The e-mail further clarified, "After 65% contingency fee is paid to Friedman Rubin, out of the remaining 35% contingency fee, we have agreed that you receive 1/3 (11.6%)

---

[1] The record does not reflect when Bharti reached out to Friedman Rubin.

share of the contingency fee and I receive 2/3 (23.4%) share of [the] contingency fee." Bharti also wrote, "Client has already given phone approval, will take care of getting client's written approval of the attached agreement." Kayshel never signed the Bharti/Teller Agreement.

About two weeks later, on May 4, 2015, Kayshel signed a "Joint Prosecution and Joint Venture Agreement" confirming that "[a]ny fees" to Teller would come from the 35 percent contingency fees distributed to Bharti. This agreement was between Bharti and Friedman Rubin (Bharti/Friedman Rubin Agreement) for the litigation of the class case with Kayshel as one of the class representatives. The Bharti/Friedman Rubin Agreement stated, "This agreement supersedes all prior agreements in this matter." Bharti and Kenneth Friedman of Friedman Rubin also signed the agreement. Teller did not sign the Bharti/Friedman Rubin Agreement. Bharti and Friedman Rubin agreed to be jointly responsible. Friedman Rubin was responsible for "trying the case, including related activities such as motions in limine, jury instructions, trial briefs and the like," and "cover[ing] all future costs and expenses related to the prosecution of the case." Bharti would "take the lead for purposes of client contact."

The Bharti/Friedman Rubin Agreement recognized that "[t]he relative amount of actual hours expended may not necessarily directly correlate with the agreed allocation of fees" and that "[h]ours exp[e]nded are not the sole measure of the fee distribution." The Bharti/Friedman Rubin Agreement acknowledged

that Bharti had "already devoted considerable time" representing Kayshel who expected Bharti to be able to have "walk in meetings at short notice, weekend and late evening meetings, as well as attending to client concerns at any hour of the day or night, as necessary." In other words, the Agreement recognized that Kayshel was a demanding client.

The Bharti/Friedman Rubin Agreement indicated that any contingent legal fees were to be divided as follows: 65 percent to Friedman Rubin, 35 percent to Bharti and "[a]ny fee shared [b]y Bharti . . . with Steve Teller . . . will be shared out of this 35% contingent fee."

Around September 2015, after the discrimination case was resolved, Kayshel wrote to the trial judge asking that the opposing counsel send the settlement check directly to Kayshel because Kayshel fired Teller on the discrimination case. Kayshel also asked the trial court and opposing counsel not to send Teller any information about the discrimination case. Teller and Kayshel settled their fee dispute in that case a few weeks later.

In October 2015, parties explored possible mediation in the class case. At that time, Bharti asked for Teller's time sheets. Teller followed up a phone conversation with Bharti with an e-mail on October 28, 2015 that provided the time sheets and thanked Bharti for keeping his word regarding the Bharti/Teller Agreement. In the same e-mail, Teller wrote:

> I think that if Mr. Kayshel remains the sole class rep, I should
> withdraw. I have been anticipating that he would be removed, and
> today you indicated that if additional reps are to be added, or

Mr. Kayshel is to be removed, that would occur within a short time following the mediation. I'm in the midst of trial, and not taking any action in this matter at this point, but remain uncomfortable despite the fact that he and I resolved our differences about the prior fee dispute by settlement. I understand from you today that he has not asked again that I withdraw from this matter, but that he expressed a preference that I not be at the mediation.

Teller said he would speak with his associates about possibly withdrawing from the class case. Bharti simply responded that he did not anticipate removing Kayshel as a class representative even if they added other named plaintiffs. Teller withdrew on November 25, 2015.

About 10 months later, on September 23, 2016, the trial court granted class certification and appointed Bharti and attorneys from Friedman Rubin as class counsel. Trial occurred from June 12, 2018 to June 28, 2018. While the jury deliberated, the parties agreed to a $2 million settlement. On September 7, 2018, the trial court granted preliminary approval of the settlement agreement.

One month later, on October 19, 2018, Teller e-mailed Bharti and Roger Davidheiser of Friedman Rubin to remind them about the Bharti/Teller Agreement. Davidheiser responded by asking for a spreadsheet of Teller's hours and a declaration to include in the motion for attorney fees.[2] Bharti responded, "My fee sharing agreement with [Teller] stands, irrespective of his termination by client."

---

[2] Trial courts have broad discretion to determine the reasonableness of attorney fees. Bowles v. Dep't of Ret. Sys., 121 Wn.2d 52, 71-72, 847 P.2d 440 (1993) (Under the "common fund doctrine," the "percentage of recovery" method "sets [class action] attorney fees by calculating the total recovery secured by the attorneys and awarding them a reasonable percentage of that recovery.").

On October 21, Teller e-mailed Bharti and Davidheiser, "Looks like we tracked about $17,500 in time through the 2015 handoff." Teller updated his billing records and explained in his declaration, "I normally charge $485 per hour, which I believe is below market rates. I believe I should be charging $525 per hour." Teller asked the trial court to approve his fees at the rate of $525 per hour. Teller also requested a total lodestar fee of $24,316.78.[3]

On November 5, 2018, Bharti and Davidheiser moved for $800,000 in attorney fees (40 percent of the $2 million settlement). To support the reasonableness of the requested fee, they included declarations of multiple attorneys, including Teller, and asserted the attorney hourly rates were typical and reasonable. On January 11, 2019, the trial court granted final approval of the settlement, including $800,000 in attorney fees. The trial court determined an award of "$800,000.00 [in attorney fees] to be reasonable, both as a percentage of the common fund and under the lodestar method."

On April 10, 2019, Teller e-mailed Davidheiser about his fee:

I think [Bharti] is out of town again, as I'm having trouble hearing back from him.

I am hopeful that the fees have not yet been disbursed, just in case there is any trouble. As you know, I have a share in the fees, as [Bharti] assured us [in his October 19, 2018 e-mail].

Did your firm already distribute the funds to [Bharti]?

---

[3] The lodestar method "requires attorney fees be calculated based on the total number of hours *reasonably* expended, multiplied by a *reasonable* hourly rate of compensation." Rafel Law Grp. PLLC v. Defoor, 176 Wn. App. 210, 226, 308 P.3d 767 (2013).

Davidheiser responded, "Yes, the fees came in and were disbursed to [Bharti]. It is our understanding that [Bharti] will distribute your share directly to you." Bharti and Teller could not come to an agreement on the fees.

On August 26, 2019, Bharti motioned the King County Superior Court "regarding distribution of approved attorney's fees and costs." Bharti filed the motion with the same judge who considered the motion for and approved the $800,000 attorney fees. Bharti asked the trial court to deny Teller attorney fees or limit his fees to no more than $17,500. Bharti argued Teller was not entitled to fees because he represented only one class member; he withdrew his representation prior to class certification; he did not contribute to most of the work (e.g., discovery, jury trial, and settlement negotiation); the trial court did not appoint him as class counsel; and his fees were not part of the approved class settlement.

Teller responded to Bharti's motion, arguing he relied on Bharti's assurances that he would honor their agreement before voluntarily withdrawing to avoid a potential conflict with Kayshel. Teller argued he asserted a lien on the money in Bharti's possession when he e-mailed Bharti and Davidheiser on October 19, 2018. Teller further asserted Bharti and Davidheiser included Teller's billing records in their request for $800,000. Teller asked the trial court not to limit his award to the total billings included in that request, $24,316.78, because Bharti agreed to provide Teller 12 percent of the total contingent attorney fee. Instead, Teller argued Bharti owed him $96,000 (12 percent of $800,000) under the terms of the Bharti/Teller Agreement.

8

Bharti filed a reply alleging that the Bharti/Teller Agreement was predicated on Teller's full participation in the case, that Teller should have known Bharti's assurances to pay Teller were only for the reasonable number of hours Teller worked, that Teller could not recover a fee where the trial court did not appoint him as class counsel, that the Bharti/Teller Agreement violated RPC 1.5 and was unenforceable, and that Teller could not assert a lien under RCW 60.40.010. Neither party requested an evidentiary hearing or challenged the trial court's authority to resolve the matter as presented.

On September 16, 2019, the trial court issued an order "adjudicating attorney fee lien dispute on Bharti['s] motion regarding distribution of approved attorneys' fees." The trial court found that

> Teller and Bharti entered into a fee division agreement which by its nature conveyed joint legal liability or responsibility, and in addition they discussed and agreed upon joint responsibility. They signed the agreement and Bharti represented that the client approved. Bharti then had the client sign a different fee division approval which references the Teller/Bharti agreement generally.

The trial court found Bharti assured Teller twice that he would honor the Bharti/Teller Agreement and Teller twice relied on Bharti's assurances:

> In 2015[,] Teller withdrew from class representation in this action when the client created a conflict of interest in a separate action. Before he did so, Bharti assured him that Bharti would honor the fee division agreement, and Teller relied on that assurance.

> In 2018, Teller learned of the class settlement and gave notice that he expected the agreement to be honored. Bharti assured co-counsel that the agreement with Teller would be honored, and Teller relied on Bharti's assurance. Bharti stated: "My Fee Sharing Agreement w/Steve stands, irrespective of his termination by client."

The trial court also found Bharti relied on Teller's declaration and time records in Bharti's motion to approve fees. The trial court found Teller's request for $96,000 to be reasonable under RPC 1.5(a).

On September 20, 2019, Teller submitted a declaration requesting prejudgment interest for the disbursement delay. Bharti objected to the request for prejudgment interest and moved for reconsideration of the trial court's September 16, 2019 order. In his motion for reconsideration, Bharti, for the first time, argued Teller should not recover any fees or, in the alternative, only $17,500 because Kayshel fired Teller from the class case.[4] Teller replied that Bharti had not yet disbursed payment and failed to identify specific reasons for reconsideration under Civil Rule (CR) 59(b) and improperly presented new evidence.

The trial court entered judgment against Bharti, awarded Teller $6,720 in prejudgment interest and $200 in attorney fees, and denied the motion to reconsider. Bharti appeals the order adjudicating the lien dispute, the judgment against Bharti, and the order denying reconsideration.

## DISCUSSION

Bharti argues the trial court erred by concluding the Bharti/Teller Agreement was enforceable under RPC 1.5(e)(1). We agree.

---

[4] To support his motion for reconsideration, Bharti included a declaration from ethics expert Arthur Lachman and e-mails between attorney Beverly Grant and Teller. Grant represented Kayshel in the fee dispute on the discrimination case. Grant's e-mail stated, "Mr. Kayshel has asked that you send him written verification that you will not represent him in the wage-hour class action."

"Attorney fee agreements that violate the Rules of Professional Conduct are against public policy and are therefore unenforceable." Rafel Law Grp. PLLC v. Defoor, 176 Wn. App. 210, 219, 308 P.3d 767 (2013). Whether an attorney's conduct violates an RPC is a question of law we review de novo. Cotton v. Kronenberg, 111 Wn. App. 258, 264-65, 44 P.3d 878 (2002).

RPC 1.5(e)(1)(ii) provides that a fee division between attorneys who are not at the same firm is permitted only if the client agrees to "*the* arrangement, including *the* share each lawyer will receive, and *the* agreement is confirmed in writing." (Emphasis added.)

Teller argues RPC 1.5(e)(1)(ii) did not require Kayshel to actually sign the Bharti/Teller Agreement because Kayshel signed the Bharti/Friedman Rubin Agreement that acknowledged Bharti was going to share his fee with Teller. We agree with Teller that the "agreement confirmed in writing" does not require the client to physically sign the Bharti/Teller Agreement, though that would be preferred for obvious reasons. However, there must be something in writing that conveys the client actually is aware of and agrees to the terms of the fee division agreement.

Contrary to what Teller argues, the Bharti/Friedman Rubin Agreement merely suggests any fees Teller receives are to come from Bharti's share. It does not reference the Bharti/Teller Agreement. It also does not reference the share Teller would receive from Bharti's 35 percent of the contingency fee.

11

Bharti argues this case is analogous to Belli v. Shaw, 98 Wn.2d 569, 657 P.2d 315 (1983). In Belli, the client hired attorney Belli, who recommended the client associate with attorney Tonkoff. 98 Wn.2d at 571. Belli, Tonkoff, and the client entered into a contingency fee agreement in which the attorneys would split the attorney fees equally. Id. Later, Tonkoff associated with attorney Goldstein, and the client entered into a new contingency fee agreement with Tonkoff and Goldstein excluding Belli. Id. at 571-72. The Supreme Court of Washington considered the subsequent contract a direct repudiation of the contract with Belli and a termination of Belli's employment. Id. at 576-77. Belli asked the Supreme Court to award him fees based on a "forwarding fee" agreement between Belli and Tonkoff. Id. at 577. The court denied the request because the forwarding fee agreement violated the client consent and disclosure requirements provided by RPC 1.5(e)'s predecessor, Model Code of Professional Responsibility Disciplinary Rule (DR) 2-107.[5] Id. at 577-78. Relevant here is DR 2-107(A)(1),

---

[5] Prior to the adoption of the RPCs in 1985, DR 2-107(A) governed the division of fees between attorneys from different firms. 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES OF PRACTICE Rules of Professional Conduct at 361 (8th ed. 2014); MODEL CODE OF PROF'L RESPONSIBILITY DR 2-107 (AM. BAR ASS'N 1980). DR 2-107 provides:
> (A) -A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
> (1) -The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
> (2) -The division is made in proportion to the services performed and responsibility assumed by each.
> (3) -The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

MODEL CODE OF PROF'L RESPONSIBILITY DR 2-107. The Belli court also determined the forwarding fee agreement violated DR 2-107(A)(2) because the services Belli performed were minimal after an initial trial. Belli, 98 Wn.2d at 577.

requiring the attorney to obtain "[t]he client['s] consent[] to employment of the other lawyer after a full disclosure that a division of fees will be made." Because Belli and Tonkoff did not obtain the client's consent for the forwarding fee agreement, that agreement violated DR 2-107(A)(1) and, therefore, violated public policy and was unenforceable. Belli, 98 Wn.2d at 577-78. Bharti is correct that Belli is analogous as to this issue.

As the preamble to the RPCs states, one of the purposes of the RPCs is to regulate attorney conduct in order to protect public interest. And, the purpose of RPC 1.5(e)(1)(ii)'s requirement that the client confirm the agreement in writing is to ensure "the client received a reasonable and fair disclosure of material elements of the fee agreement." RPC 1.5(cmt. 11). Nothing in the record supports a finding that Kayshel agreed in writing to the Bharti/Teller Agreement despite Bharti's assurances that he would obtain Kayshel's agreement in writing. Thus, the Bharti/Teller Agreement violates public policy, is unenforceable as a matter of law, and cannot be the trial court's basis for determining what fees to award Teller.

However, unlike in Belli where Tonkoff, Goldstein, and the client entered into a new contingency fee agreement completely excluding Belli, here, Kayshel approved in writing the Bharti/Friedman Rubin Agreement that would award Teller fees out of Bharti's 35 percent of the contingency award. 98 Wn.2d at 571-72. It is for the trial court to determine what that provision of the Bharti/Friedman Rubin Agreement allows.

13

We reverse and remand to the trial court to consider the parties' legal theories and evidence in determining an equitable resolution in light of our ruling.[6]

Coburn, J.

WE CONCUR:

Mann, C.J.

Dwyer, J.

---

[6] Because the RPC 1.5(e)(1)(ii) issue is dispositive, we need not reach the issues of whether the trial court erred in denying Bharti's motion for reconsideration, erred in summarily adjudicating Teller's attorney lien, or abused its discretion in determining Teller justifiably relied on Bharti's assurances to honor the Bharti/Teller Agreement. Bharti also requests costs on appeal and has submitted a timely cost bill. A commissioner or clerk of this court determines requests for costs in accordance with RAPs 14.2 and 14.6.