# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RAFEL LAW GROUP PLLC, | ) | DIVISION ONE |
| Respondent, | )<br>)<br>) | No. 68339-0-I |
| v. | )<br>) | PUBLISHED IN |
| STACEY DEFOOR, | )<br>) | PART OPINION |
| Appellant. | )<br>) | |
| | ) | FILED: August 19, 2013 |

DWYER, J. — Rule of Professional Conduct 1.8(a) prohibits an attorney from entering into a business transaction with a client or acquiring an interest adverse to the client unless the attorney satisfies certain requirements designed to protect the client's interest. However, with one exception not applicable herein, business transactions entered into with prospective clients or in anticipation of establishing an attorney-client relationship do not fall within the scope of the rule. Here, Stacey Defoor's attorney-client relationship with Rafel Law Group had not yet commenced at the time the parties entered into a settlement and re-engagement agreement and promissory note. Thus, Rule of Professional Conduct 1.8(a) does not apply to the agreement and note. Accordingly, we affirm the trial court's order granting summary judgment in favor of Rafel Law Group and giving effect to the agreement and note.

In the unpublished portion of this opinion, we conclude that the trial court neither erred by granting Rafel Law Group partial summary judgment awarding attorney fees and costs, nor by dismissing on summary judgment Defoor's claims for legal malpractice and breach of fiduciary duty.

I[1]

Stacey Defoor's committed intimate relationship with Terry Defoor ended in 2006.[2] During their time together, Terry and Defoor developed G.W.C. Inc. (GWC), a successful real estate company. Following the termination of their relationship, Terry removed Defoor as an officer and registered agent of GWC and seized control of GWC and its assets. Defoor filed suit, seeking a determination of her committed intimate relationship with Terry and an equitable distribution of property. In June 2007, Defoor requested that Anthony Rafel of Rafel Manville PLLC, now known as Rafel Law Group PLLC (RLG), substitute as her counsel in the suit. On June 29, 2007, Defoor signed a contingency fee agreement with RLG, specifying that RLG would be paid only upon Defoor's recovery in the underlying litigation.[3]

---

[1] In her briefing, Defoor frequently cites to portions of her supplemental declaration. However, several portions of this pleading were ordered stricken by the trial court. Moreover, although Defoor assigns error to the trial court's order striking these portions, she states in a footnote that "it is unnecessary for this Court to reach the trial court's order," because "other evidence in the record establishes material factual disputes." Br. of App. at 41. In fact, Defoor fails to provide a basis for us to conclude that the trial court erred by striking portions of her supplemental declaration. Therefore, we affirm the trial court's order to strike and ignore Defoor's references to portions that were stricken.

[2] We will refer to Stacey Defoor, a party to this appeal, as Defoor. For clarity, we will refer to Terry Defoor as Terry.

[3] The agreement also contained a provision in which RLG promised to advance all costs throughout the litigation, for which Defoor would be ultimately liable.

Disputes arose between Defoor and RLG regarding, in part, RLG's attorney fees and costs. As a result, shortly before trial, RLG moved for leave to withdraw as counsel for Defoor. The trial court granted RLG's motion on January 7, 2008. The trial court found good cause for RLG's withdrawal, which became effective on January 10, 2008.[4]

RLG filed several attorney's claims of lien in the underlying litigation. The firm filed its first attorney's claim of lien on December 26, 2007, prior to its withdrawal. This lien claimed 30 percent of the total amount recovered by Defoor in the action, plus costs, and, in the alternative, a lien in the amount of the value of RLG's services, totaling $475,921, plus costs totaling no less than $200,000. RLG filed several updated liens thereafter. By January 14, 2008, after RLG's withdrawal, its updated claimed lien was for 30 percent of Defoor's total recovery, plus costs, and, in the alternative, the value of RLG's services rendered to Defoor, totaling $505,000, plus costs in the amount of $270,000.

Following RLG's withdrawal, RLG and Defoor continued communicating with one another, and eventually began to negotiate RLG's re-engagement as trial counsel for Defoor in the underlying litigation. Rafel informed Defoor that RLG would represent her again under these conditions: that she acknowledge the $775,000 in past fees and costs due for RLG's services performed on her behalf prior to its withdrawal; that she agree to pay attorney fees going forward

---

[4] The trial court's order was conditioned on RLG taking steps to protect Defoor's interests, including continuing with ongoing mediation attempts at Defoor's option, and turning over her files to substitute counsel should Defoor engage the services of a new attorney. The trial judge also continued the trial to March 3, 2008.

on an hourly basis; and that she secure her obligations by signing a promissory note.[5] The parties thereafter reached an agreement memorialized in a settlement agreement and attorney re-engagement agreement and promissory note.[6]

The Agreement included the following provisions:

> 4. Fees and Costs for Re-Engagement. Defoor shall pay RLG for its representation of Defoor pursuant to this Agreement, and shall reimburse RLG for any and all costs advanced by RLG on Defoor's behalf in the Litigation. . . . RLG's fees for services rendered pursuant to this Agreement shall be determined on an hourly fee basis using RLG's regular fee schedule for contingent litigation, rather than as a percentage of the recovery. The fees so computed shall be . . . treated as Additional Advances under the promissory note . . . . Defoor shall be obligated to pay said fees regardless of the outcome in the Litigation or Defoor's recovery therein. In addition, RLG will advance the costs needed to bring the Litigation to trial. . . . Defoor agrees to reimburse RLG for all costs advanced, regardless of the outcome in the Litigation or Defoor's recovery therein, and the amounts so advanced shall be treated as Additional Advances under the promissory note.
>
> 5. Lien. Defoor hereby grants RLG a lien for the total amount of the past fees and costs for which she is obligated ($775,000), plus the amount of additional fees and costs incurred by or on behalf of Defoor pursuant to this Agreement. This lien shall apply and be enforceable against any recovery by Defoor in the Litigation and any assets of Defoor, whether awarded in the Litigation, obtained in settlement, or otherwise.

---

[5] The parties refer to services rendered and costs incurred on behalf of Defoor before RLG's withdrawal as "Matter 1." Likewise, the parties refer to services rendered and costs incurred after RLG's re-engagement as "Matter 2." This nomenclature is adopted herein.

[6] The settlement and re-engagement agreement and promissory note are hereafter referred to as "Agreement" and "Note," respectively.

In addition, the Note designated the sum of $775,000 as being owed to RLG by Defoor, accompanied by interest on the unpaid principal accruing as of January 10, 2008.[7]

Before she signed the Agreement and Note, Defoor sought the advice of the attorneys who had first represented her in the underlying litigation. After reviewing the terms of the Agreement and Note, these attorneys recommended against Defoor's re-engagement with RLG. Notwithstanding this advice, Defoor signed the Agreement and Note on February 14, 2008, while in Florida.[8] She did so in the presence of witnesses and a notary public.

RLG reappeared as counsel for Defoor on February 20, 2008. The trial of the dissolution dispute took place over 19 days in March 2008. RLG retained the services of Paul Sutphen to testify as an expert witness at trial. Sutphen is a forensic certified public accountant. He created a balance sheet and supporting schedule showing the parties' assets and liabilities as they existed around the time of separation.[9] Sutphen testified at trial and presented the balance sheet to the trial court.

RLG also presented to the trial court evidence of proceeds that GWC received from pending projects after Defoor and Terry separated, including a

---

[7] The Note required that Defoor pay the principal and interest upon the earliest occurrence of any of the following events: (a) receipt of funds by Defoor in connection with the underlying litigation; (b) the sale by Defoor of any residential properties in which Defoor had a title interest; or (c) June 15, 2008.

[8] These attorneys memorialized their advice in a letter to Defoor, which was received by her several days after she signed the Agreement and Note. There is no indication in the record, however, that Defoor's receipt of the letter motivated her to attempt to either rescind the agreement or modify its terms.

[9] The balance sheet identified bank accounts, real properties, boats, and other assets that existed at the time of the Defoor separation, which were held by Defoor, Terry, and GWC.

$1,050,000 assignment fee that was paid to GWC byin October 2007. RLG did not, however, inform the trial court that Terry had transferred $950,000 of the $1,050,000 Camwest Development assignment fee to a new UBS bank account immediately after he had received the fee. RLG did not do so because it was unaware that Terry had transferred the money to a new account, despite its efforts to identify all community assets.[10]

Following trial, the trial court distributed to the parties draft findings of fact and a draft property award, which did not specifically award Defoor the $1,050,000 Camwest assignment fee. As a result, RLG submitted to the trial court a redline of the draft findings of fact and property award, in which RLG identified the $1,050,000 assignment fee and requested that the trial court allocate half of those funds to Defoor.

On November 20, 2008, the trial court entered judgment in the underlying litigation. Although the trial court's award to Defoor was substantially in her favor,[11] the judgment did not specifically identify the $1,050,000 assignment fee. However, Defoor was awarded substantial interest in contract rights to property and, significantly, half of any undisclosed assets. Moreover, the trial court

_____

[10] RLG's interrogatories requested identification of all bank accounts. In response to RLG's interrogatories, Terry and GWC failed to identify the new UBS bank account containing the $950,000 portion of the $1,050,000 Camwest assignment fee. RLG also issued several document subpoenas in an effort to identify all of the community assets. One of these subpoenas was to UBS in Montana, where the new UBS account was opened. UBS disclosed the existence of two accounts, which did not contain the Camwest assignment fee, and stated that it had not found other accounts in the name of Defoor or GWC.

[11] The trial court's award included the following: the cash sum of $2,223,368.60; interests in real property valued by the court at over $2 million; three Porsche vehicles valued at $140,000 total; a boat valued at $100,000; jewelry valued at $46,400; and certain contract rights to which the court did not assign a cash value.

awarded all GWC liabilities to Terry. Terry thereafter appealed the trial court's ruling[12] and filed for bankruptcy.[13]

In accordance with its terms, the Note became due and payable on June 15, 2008. RLG had issued regular invoices to Defoor since March 2008 for the amount of principal and interest owing on the $775,000 sum incurred for Matter 1, before RLG's withdrawal, as well as for services rendered and costs advanced for Matter 2, since RLG's re-engagement. Because no payment had been made, on June 22, 2010, RLG brought suit against Defoor, seeking compensation for attorney fees and costs incurred on behalf of Defoor, pursuant to the Agreement and Note.

Defoor counterclaimed, asserting breach of fiduciary duty and legal malpractice. The trial court dismissed these claims on summary judgment, finding that Defoor presented no evidence to support her counterclaims. Moreover, in holding enforceable the Agreement and Note, the trial court granted RLG's motion for summary judgment regarding the Agreement. Contrary to Defoor's assertion that RLG violated Rule 1.8 of the Rules of Professional Conduct (RPC), the trial court found that "Ms. Defoor was not a client at the time

---

[12] The decision on appeal is Defoor v. Defoor, noted at 157 Wn. App. 1033 (2010). We reversed in part, holding that the trial court counted twice the proceeds from the sale of the Defoors' Costa Rica condominium. We also remanded for further inquiry into whether the trial court allocated to Terry a line of credit debt as part of its fair and equitable property distribution. Following proceedings on remand, Terry, GWC, and Merrilee A. MacLean, the chapter 7 bankruptcy trustee for Terry's estate, appealed. The unpublished consolidated decision on appeal is Defoor v. Defoor, Nos. 67457-9-I, 67458-7-I, 2013 WL 1164772 (Wash. Ct. App. March 18, 2013).

[13] At the time of this appeal, Defoor had not recovered any cash as the result of the award against Terry.

the subject Agreement was negotiated and signed. Thus, RPC 1.8 does not apply as a matter of law."

The trial court additionally granted RLG's motion for partial summary judgment on attorney fees and costs, awarding RLG $497,117.50 for attorney fees for Matter 1 and $405,860.42 for attorney fees for Matter 2, totaling $902,977.92.[14] In that same order, the trial court awarded RLG judgment for costs RLG incurred and paid on behalf of Defoor in the amount of $383,184.29. The trial court thereafter awarded RLG prejudgment interest in the amount of $490,563.81.

Defoor appeals.[15]

II

Defoor's principal contention is that the Agreement and Note are void as a matter of law because RLG failed to comply with RPC 1.8(a). This argument is premised on the assertion that RPC 1.8(a) applies to the Agreement and Note. This is so, Defoor avers, because (1) RPC 1.8 governs transactions entered into concurrently with the attorney's engagement, during the formation of the attorney-client relationship, and (2) the Agreement and Note involved a "business transaction" and a "security interest" that implicate RPC 1.8(a). We disagree.

---

[14] The trial court made an arithmetic error and entered judgment in the amount of $902,978.22.

[15] RLG submitted a motion requesting that this court, pursuant to RAP 10.3(c) and RAP 10.7, strike Defoor's reply brief, or, in the alternative, permit RLG to file a response to the reply brief pursuant to RAP 10.1(h). RLG argues that Defoor's reply brief contains "new arguments, authorities and evidence." Defoor's reply brief substantially comports with RAP 10.3(c) insofar as it responds to issues raised in RLG's respondent's brief. Accordingly, we deny RLG's motion to strike Defoor's reply brief.

This court's review of orders granting or denying summary judgment is de novo, and we engage in the same inquiry as the trial court. Aba Sheikh v. Choe, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A "material fact" is one upon which the outcome of the litigation depends. Cotton v. Kronenberg, 111 Wn. App. 258, 264, 44 P.3d 878 (2002) (citing Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997)). All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. Mountain Park Homeowners Ass'n v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

Whether an attorney's conduct violated the RPC is a question of law. Eriks v. Denver, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992). Business transactions within the scope of RPC 1.8(a) are considered prima facie fraudulent. In re Disciplinary Proceeding Against Holcomb, 162 Wn.2d 563, 580, 173 P.3d 898 (2007); In re Disciplinary Proceeding Against Johnson, 118 Wn.2d 693, 704, 826 P.2d 186 (1992) (citing In re Disciplinary Proceeding Against McGlothlen, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983)). Attorney fee agreements that violate the Rules of Professional Conduct are against public policy and are therefore unenforceable. Simburg, Ketter, Sheppard & Purdy, L.L.P. v. Olshan, 109 Wn. App. 436, 445, 988 P.2d 467, 33 P.3d 742 (1999).

RPC 1.8(a) governs business transactions between lawyers and clients. It prohibits an attorney from participating in business transactions with a client

unless the attorney satisfies certain disclosure requirements designed to protect the client's interests. In pertinent part, RPC 1.8 provides:

CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES

(a)     A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1)     the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client.[16]

Defoor asserts that RPC 1.8(a) applies to the Agreement and Note because they were entered into concurrently with the new attorney-client engagement. Defoor's contention is mistaken. RPC 1.8(a) governs transactions entered into during the course of the attorney-client relationship. The rule does not apply to transactions entered into prior to the creation of the attorney-client relationship or those agreed upon during the relationship's formation.[17] Such application is made clear by the plain language of RPC 1.8, which expressly prohibits an attorney from entering into "a business transaction with a client." The language of the rule makes no reference to transactions with prospective clients or transactions entered into in anticipation of representation. The rule itself is thus limited to conflicts of interests with *current* clients. Given that this rule was enacted by our Supreme Court, which is charged with rule oversight of

---

[16] Defoor does not challenge RLG's compliance with RPC 1.8(a)(2) and (a)(3). RPC 1.8(a)(2) prescribes that the client be advised "in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction." RPC 1.8(a)(3) requires that the client give "informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction."

[17] The sole exception to this general rule is discussed infra.

attorney discipline and regulatory matters, In re Disciplinary Proceeding Against Greenlee, 158 Wn.2d 259, 266-67, 143 P.3d 807 (2006), it would be improper for us to import language into the rule to create a broader application than that warranted by the text of the rule.

Moreover, the structure and organization of the rules provide further indication that RPC 1.8 does not apply to transactions with prospective clients or those entered into in anticipation of formation of an attorney-client relationship. The rules are organized and categorized, in part, according to an attorney's duties to prospective, current, and former clients. In particular, the heading of RPC 1.7 is entitled, "Conflict of Interest: Current Clients," and thus concerns a lawyer's duties to current clients. RPC 1.8 sets forth the obligations owing to current clients, as demonstrated by its heading, "Conflict of Interest: Current Clients: Specific Rules." Further, RPC 1.9 sets forth "Duties to Former Clients," while RPC 1.18 specifies "Duties to Prospective Client[s]." Thus, the structure of the rules is consistent with the conclusion that RPC 1.8(a) does not apply to transactions entered into with prospective clients.

In addition, the principle underlying RPC 1.8(a) is consistent with our determination. The Official Comments to the Rules are instructive in this regard. Comment 1 explains that "[a] lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client." RPC 1.8 cmt. 1. RPC 1.8(a) is therefore designed to prevent an attorney, who likely benefits from a considerable

advantage when dealing with a client, from exploiting the attorney-client relationship, given that the client should be free to repose a great deal of trust and confidence in the attorney. Conversely, when an attorney negotiates with a prospective client the terms of the initial fee agreement, the attorney-client relationship has not yet been established. Thus, the attorney does not owe the same duty that he or she owes to a current client. If the prospective client is dissatisfied with the terms of the proposed engagement agreement, the prospective client is free to decline representation or seek representation elsewhere.

Here, it is undisputed that at the time Defoor and RLG reached agreement on the Agreement and Note, an attorney-client relationship had not yet commenced. To the contrary, their previous relationship had been terminated, as evident by the trial court's order granting RLG's leave to withdraw. At the time the Agreement and Note were negotiated, Defoor was not a "current client" of RLG for purposes of RPC 1.8(a).

Notwithstanding that Defoor was not a current client of RLG at the time the Agreement and Note were negotiated, Defoor insists that RPC 1.8(a) applies because the Agreement grants a lien to RLG against "any assets of Defoor" securing payments due for work on Matters 1 and 2. This grant of a security interest, Defoor asserts, brings the Agreement within the scope of RPC 1.8(a). This is so, Defoor contends, because an official comment to RPC 1.8(a) states that the rule "does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5, although its requirements must be met

- 12 -

when the lawyer accepts an interest in the client's business or other nonmonetary property *as payment* of all or part of a fee." RPC 1.8 cmt. 1 (emphasis added). Defoor maintains that the security interest granted in the Agreement constitutes "payment," within the meaning of the comment. Thus, Defoor asserts, RPC 1.8(a) applies to the Agreement. We disagree.

First, the Note securing payment for $775,000—as settlement for Defoor's obligation to RLG for its services and costs for Matter 1—constitutes nothing other than an accord, the satisfaction of which has not been performed by Defoor because she has not paid the amount owed.[18] Because of this and the absence of an attorney-client relationship at the time the Agreement and Note were negotiated, RPC 1.8 is inapplicable to the grant of a lien securing payment of fees for work done on Matter 1.

Second, contrary to Defoor's contention, the cited lien provision does not constitute payment for RLG's legal services. Comment 1 pertains to circumstances in which an attorney acquires an interest in the property of a client *as payment* of fees, such as a total or partial ownership in a client's business. It does not pertain to a security interest designed to protect the attorney against *nonpayment*.

A case relied upon by Defoor is actually consonant with this view. See Holmes v. Loveless, 122 Wn. App. 470, 94 P.3d 338 (2004). Attorney Holmes

---

[18] Black's Law Dictionary defines an accord as "[a]n offer to give or to accept a stipulated performance in the future to satisfy an obligor's existing duty, together with an acceptance of that offer. The performance becomes what is known as a *satisfaction*." BLACK'S LAW DICTIONARY 18 (9th ed. 2009). See Dep't of Fisheries v. J-Z Sales Corp., 25 Wn. App. 671, 676, 610 P.2d 390 (1980).

- 13 -

and his law firm began performing legal services for Loveless in 1970. Two years later, Loveless and his business partner, Tollefson, launched a joint venture. In 1972, Holmes and his law firm entered into a fee agreement with the joint venture in which the law firm, in exchange for charging a reduced hourly fee for work performed, would receive five percent of the joint venture's cash distributions.[19] Holmes, 122 Wn. App. at 473. The court concluded that RPC 1.8(a) and RPC 1.5(a) governed the 1972 agreement because the law firm's "compensation was directly linked to the joint venture's profits." Holmes, 122 Wn. App. at 475-76.

In contrast to Holmes, here, RLG obtained no direct interest in Defoor's property as payment for the work it performed. Instead, the Agreement stipulated that payment would be calculated on an hourly basis for services performed after RLG's re-engagement. RLG billed Defoor monthly for services rendered on Matter 2; all amounts unpaid were added to the sum due on the promissory note. The value of the compensation earned by RLG was measured by its rates and the hours it worked. It was neither increased nor decreased by the value of the property to which a lien attached, securing unpaid amounts due. The grant of an interest to secure payment is not the same as payment.

Similarly unavailing is Defoor's reliance on Cotton v. Kronenberg, 111 Wn. App. 258, for what she claims reflects longstanding Washington precedent that

---

[19] Although the facts of the case clearly indicate that Loveless was represented by Holmes and his law firm two years prior to the joint venture's fee agreement with the firm, the court did not expressly address whether Loveless, Tollefson, or the joint venture, were "current clients" at the time the joint venture agreement or the fee agreement were signed.

RPC 1.8(a) applies to business transactions that are included as part of the terms of the lawyer's engagement. In fact, Cotton set forth no such rule.

Courts have applied RPC 1.8(a) to modifications or renegotiations of fee arrangements made *during* the representation. "[A]ny modification of a fee arrangement after an attorney-client relationship has been established is subject to 'particular attention and scrutiny.'" Cotton, 111 Wn. App. at 272 n.34 (internal quotation marks omitted) (quoting Perez v. Pappas, 98 Wn.2d 835, 841, 659 P.2d 475 (1983)). "[I]f the renegotiation results in greater compensation than counsel was entitled to under the original agreement, courts may refuse to enforce the renegotiation unless it is supported by new consideration." Perez, 98 Wn.2d at 841.

Cotton involved the modification of a fee agreement with an existing client. In that case, we determined that the second fee agreement, requiring the exchange of real property for legal services, violated RPC 1.8(a). 111 Wn. App. at 262. The second fee agreement, signed a few days after the first, transferred Cotton's real property and mobile home to his attorney, Kronenberg, in full satisfaction of Kronenberg's fees earned in the case. The second fee agreement was entered into after Kronenberg and Cotton's attorney-client relationship had commenced. The challenged fee agreement superseded the initial fee agreement.

Nothing like that happened here. The Agreement and Note were negotiated before RLG and Defoor re-established an attorney-client relationship. The court had explicitly permitted and supervised the severing of the first

attorney-client relationship. Because an attorney-client relationship was nonexistent at the time the Agreement and Note were negotiated and entered into, Defoor's reliance on Cotton is misplaced.

Defoor's next contention involves a theory that she first presented at oral argument in this court; a theory that was neither previously addressed in her briefing on appeal nor in her pleadings in the trial court. She asserts that even after RLG's withdrawal and before its re-engagement, an attorney-client relationship continued to exist, thereby subjecting the Agreement and Note to RPC 1.8(a). The existence of this relationship, Defoor argues, is reflected in RLG's billing records, which indicate that RLG performed legal services on behalf of Defoor in preparation for their re-engagement.[20] Further, following appellate oral argument, Defoor submitted a statement of additional authorities, in which she argues that "Rafel Law Group's provision of legal services between January 11 and February 14, 2008 creates at least an issue of fact regarding the existence of an attorney-client relationship."

We decline to evaluate the merits of this tardily-raised argument. In reviewing an order granting or denying a motion for summary judgment, we "will consider only evidence and issues called to the attention of the trial court." RAP 9.12. Defoor's contention was not raised in her pleadings to the trial court, thus denying RLG the opportunity to offer evidence or argument designed to rebut the

---

[20] Such services included drafting the Agreement and Note, communicating with Defoor regarding the possibility of re-engagement, and serving and filing an updated attorney's lien claim. As discussed infra, Rafel later removed some of these billing entries, excluding the work performed from the list of work from which RLG calculated its damages stemming from Defoor's breach of the Agreement.

contention. Nor did Defoor address this theory in her briefing on appeal, similarly denying RLG the opportunity to respond. Finally, Defoor sought to argue her case in its statement of additional authorities, in contravention of RAP 10.8. Defoor's contention, raised for the first time on appeal, is not properly before this court. It will not be further addressed.[21]

The terms of the Agreement and Note do not fall within the scope of RPC 1.8(a). Defoor was not a current client at the time Defoor and RLG contracted for the Agreement and Note. In addition, the lien securing an interest in Defoor's assets does not fall within Official Comment 1's exception to the general rule. The trial court did not err in giving effect to the Agreement and Note.[22]

The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.

---

[21] RLG filed a motion to strike Defoor's statement of additional authorities, noting that the statement violates RAP 10.8. The rule provides that a statement of additional authorities "should not contain argument, but should identify the issue for which each authority is offered." RAP 10.8. RLG is correct that Defoor improperly presented argument in its statement of additional authorities. However, because we decline to consider Defoor's new argument for the reasons set forth above, we need not rule on RLG's motion to strike.

[22] RLG contends that Defoor should be estopped from asserting her claims because she fraudulently induced RLG to enter into the Agreement. In support of this argument, RLG points to Defoor's deposition, in which she testified that when she signed the Agreement, she did not, in fact, agree to its terms and that her acknowledgement of some of its terms was "totally false." Defoor also testified that at the time she signed the Agreement, she had plans to later bring suit against Rafel, contesting her duty to pay legal fees. Although she discussed this intention with her former attorney and Terry's counsel, she did not make Rafel aware of her plan because she believed he would not have accepted representation. It appears, therefore, that Defoor had no intention to honor the Agreement and Note at the time she signed them. However, because the Agreement is valid and enforceable, we need not address this claim.

Similarly, the trial court did not adjudicate RLG's amended claims for common law fraud and fraudulent inducement. After the trial court granted RLG's motion for summary judgment re: re-engagement agreement and RLG's motion for summary judgment dismissing negligence, breach of fiduciary duty and other damages claims, RLG sought leave to amend its complaint to withdraw its claims for common law fraud and fraudulent inducement. The trial court granted RLG's motion to dismiss the fraud claims without prejudice.

III

Defoor next contends that the trial court erred by dismissing her legal malpractice claim, asserting that disputed factual issues preclude summary judgment. We conclude that no genuine issues of material fact were established to preclude summary judgment and that the trial court did not err by summarily adjudicating Defoor's malpractice claim.[23]

Defoor first argues that a question of fact exists as to whether RLG breached the applicable standard of care because RLG failed to track Terry's postseparation disposition of community assets. In support of this argument, Defoor points to the expert testimony of attorney Ted Billbe, in which he opined:

> [D]uring the time that Mr. Rafel represented Ms. Defoor, he did not do a proper job of tracking the assets that were quasi-community and that resulted in him not being able to put on a proper case to present to the judge all of the assets . . . that constituted the quasi-marital property to be divided.[24]

To establish a legal professional negligence claim, Defoor must prove: (1) the existence of an attorney-client relationship giving rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred. Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). Expert testimony is

---

[23] In discussing this claim on appeal, Defoor relies in her briefing on portions of the supplemental declaration that were stricken pursuant to the trial court's order. As earlier stated, we affirm this order.

[24] Defoor also refers to statements made by Rafel that purportedly reveal his acknowledgement of the duty to track assets. However, such evidence has no relevance to the question of whether Rafel in fact breached the duty.

often required to determine whether an attorney's duty of care was breached in a legal professional negligence action. Geer v. Tonnon, 137 Wn. App. 838, 851, 155 P.3d 163 (2007).

Defoor fails to raise a material question of fact as to whether RLG breached its duty of care. The record reveals that, in the underlying litigation, RLG did, in fact, present to the trial court evidence of Terry's postseparation disposition of assets. RLG's expert provided the court a balance sheet and schedule showing Terry's assets and liabilities that existed when Terry and Defoor separated. Further, although RLG did not prove to the trial court that Terry transferred $950,000 of the $1,050,000 Camwest assignment fee to a new UBS account, it did present evidence to the trial court of GWC's receipt of the $1,050,000 assignment fee.

Nor does Defoor demonstrate that RLG's alleged failure to track postseparation disposition of community assets proximately harmed Defoor. To prove proximate cause, the complainant must prove both cause in fact and legal causation. Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S., 112 Wn. App. 677, 682-83, 50 P.3d 306 (2002). "Cause in fact refers to the 'but for' consequences of an act," City of Seattle v. Blume, 134 Wn.2d 243, 251, 947 P.2d 223 (1997), which requires the complainant to show that he or she would have prevailed or achieved a better result but for the attorney's negligence. Halvorsen v. Ferguson, 46 Wn. App. 708, 719, 735 P.2d 675 (1986).

Here, Defoor puts forward no evidence indicating that the trial court would have awarded her a larger judgment had RLG differently accounted for the

- 19 -

disposition of assets. Instead, Defoor maintains that she was injured by RLG's alleged failure to track the disposition of assets because it led to the trial judge's refusal to allocate to her value from such assets. However, *Defoor was awarded 50 percent of any undisclosed assets.* Thus, even if it were true that RLG failed to identify concealed assets, Defoor would nonetheless be entitled to recover half of them upon their disclosure.

Moreover, when asked the extent to which Defoor had been damaged by RLG's failure to track assets, Defoor's expert could not provide an answer. Thus, Defoor's assertions are merely speculative; she provided no evidence—through expert testimony or otherwise—to establish that but for RLG's asserted negligence, she would have been awarded a greater judgment or have been able to collect on it.[25] Absent such evidence, Defoor's claim for legal malpractice is insufficient to withstand RLG's motion for summary judgment.

Accordingly, even viewing the evidence in the light most favorable to Defoor, no material factual disputes precluded summary judgment on her legal malpractice claim.

---

[25] RLG asserts that Defoor's claim fails as a matter of law because Defoor cannot prove that she would be able to collect on the judgment even had she been awarded a larger judgment. "[C]ollectibility of the underlying judgment is a component of damages in a legal malpractice action." Matson v. Weidenkopf, 101 Wn. App. 472, 484, 3 P.3d 805 (2000). Here, Defoor faced and faces considerable impediments to full collection on the judgment in the underlying litigation because Terry and his two companies declared bankruptcy.

VI

Defoor next contends that the trial court erred by dismissing her breach of fiduciary duty claim. We disagree. The evidence she proffers does not demonstrate such a breach on the part of RLG.

Violation of the Rules of Professional Conduct may not be used as evidence of legal malpractice. Hizey, 119 Wn.2d at 265-66. A trial court can, however, consider the RPCs when determining whether an attorney breached his or her fiduciary duty to a client. See Cotton, 111 Wn. App. at 266. A claim for breach of fiduciary duty requires the claimant to prove: (1) the existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach caused the injury. Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wn. App. 412, 433-34, 40 P.3d 1206 (2002).

First, Defoor's argument to the trial court in opposition to RLG's motion for summary judgment was identical to that asserted on behalf of her legal malpractice claim. Because there are no genuine issues of material fact precluding her legal malpractice claim, her fiduciary duty claim likewise fails.

Defoor nonetheless asserts that because the trial court erred by determining that no breach of RPC 1.8(a) had occurred, the trial court also erred by dismissing Defoor's breach of fiduciary duty claim as it related to the Agreement. This claim fails for the reasons previously given.

Defoor next maintains that RLG breached its fiduciary duty because it filed excessive and unreasonable attorney's liens before, during, and after its engagement and falsely informed Defoor that she owed an "obligation" to pay

such fees. This claim is not well taken. Defoor offered no evidence establishing that RLG breached its duty in such a manner. Expert witness Billbe's opinion that RLG breached its duty by failing to track community assets does not substantiate a claim for breach of fiduciary duty based on the filing of allegedly excessive liens or the asserted charging of unreasonable fees. Conversely, RLG's expert, Jeffrey Tilden, opined that the Matter 1 and Matter 2 fees ($505,000 and $425,500, respectively)—upon which the lien amounts were based—were reasonable. Such expert testimony was unrebutted by Defoor.

Defoor also argues that RLG's assertion of an attorney's lien for costs that had not actually been paid by RLG at the time of filing the lien was unlawful. The trial judge granted summary judgment in favor of RLG for the total costs RLG paid on Defoor's behalf, amounting to $274,250.28. In addition, the trial court awarded RLG $108,934.01 in costs RLG incurred, which remained outstanding at the time. However, the $274,250.28 in costs paid on behalf of Defoor is more than the $270,000 claimed in the attorney's lien. Further, both the initial contingency fee agreement and the Agreement require Defoor to pay RLG for all costs advanced on her behalf. Thus, Defoor fails to raise questions of material fact as to whether RLG breached its fiduciary duty by asserting an attorney's lien for costs incurred and paid.

Defoor contends that the filing of purportedly excessive liens caused her injury because they compromised her ability to find other counsel shortly before trial, thus resulting in economic harm. However, because Defoor fails to raise a

- 22 -

material question of fact as to whether RLG breached its fiduciary duty, this contention as to resulting injury is immaterial.

Finally, Defoor argues that she suffered emotional distress as a result of the lien claims, insisting that she is entitled to compensation for serious emotional distress flowing from RLG's breach of fiduciary duty. Even if emotional distress damages were available for a breach of fiduciary duty claim,[26] we need not address this claim because Defoor is unable to show disputed factual issues regarding the existence of such a breach.

No genuine issue of material fact was shown to exist on this claim. The trial court properly granted summary judgment dismissing Defoor's breach of fiduciary duty claim.

V

Defoor next asserts that material factual disputes exist regarding the reasonableness of RLG's billing rates and the hours expended on the underlying litigation, thus precluding summary judgment. Again, we disagree.

In its motion for partial summary judgment on attorney fees and costs, RLG argued that if the trial court found enforceable the Agreement and Note, then RLG would be entitled to an award of attorney fees for Matters 1 and 2. RLG alternatively argued that if the court did not find them enforceable, then it should utilize the lodestar method to determine the amount of a quantum meruit recovery. Notably, in its order granting plaintiff's motion for partial summary

---

[26] Defoor asserts that Nord v. Shoreline Sav. Ass'n, 116 Wn.2d 477, 805 P.2d 800 (1991), provides for such damages. This is not at all clear, and need not be decided by us in order to resolve this dispute.

judgment on attorney fees and costs, the trial court stated: "The Court finds that the same reasonable fee amounts are properly payable whether the basis for recovery is the Re-Engagement Agreement and Promissory Note between Plaintiff and Defendant or *quantum meruit*."

Defoor challenges RLG's application of the lodestar methodology in computing its award. Particularly, Defoor argues that there are material factual disputes involving the rates, hours, and reasonableness of RLG's fee request that should preclude summary judgment.

The lodestar methodology requires that attorney fees be calculated based on the total number of hours *reasonably* expended, multiplied by a *reasonable* hourly rate of compensation. Morgan v. Kingen, 166 Wn.2d 526, 539, 210 P.3d 995 (2009) (emphasis added). After determining the lodestar, the trial court may then adjust the award to reflect factors not already taken into consideration. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 598, 675 P.2d 193 (1983). Such factors include the time expended on the case, the difficulty of the questions involved, the skill required, the customary rates of other attorneys, the amount involved, the benefit resulting to the client, the contingency or certainty in collecting the fee, and the character of the employment. Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 150, 859 P.2d 1210 (1993). The trial court should also "discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time." Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007) (citing Bowers, 100 Wn.2d at 597, 600).

To support its motion for partial summary judgment on attorney fees and costs, RLG offered expert witness Tilden's deposition testimony as well as his written declaration. Attorney Tilden opined as to the reasonableness of the attorney fees and costs sought by RLG.[27]

Tilden provided the following opinions: the end result in the case was excellent; RLG's time keeping was more than adequate; the legal services described in the hourly time records and monthly invoices were necessary and appropriate; Rafel's hourly rate of $450 was reasonable, and in fact low, and that Tilden "would never have taken this case on these terms for a number approaching $450/hour";[28] the rates charged by RLG's attorneys and staff were reasonable; and, the total fees sought for legal services in both matters were reasonable given the risks involved in accepting representation in a hotly contested case. Tilden also disagreed with Defoor's contention that RLG's fees were unreasonable and excessive in light of the 2008 recession and economic downturn. He stated that the impact of the recession "cannot be laid at the feet of the lawyers."

---

[27] In particular, Tilden was asked to opine on the reasonableness of the hourly rates charged to Defoor by RLG, whether the work performed in light of the amount at stake and the end result was necessary and appropriate, whether the time entries of the billings of RLG and other time records were sufficiently detailed to judge the reasonableness of the attorney fees charged, and whether the total hourly fees charged were reasonable under the circumstances. Tilden was also asked to opine as to whether the costs incurred were reasonable. All of his testimony was favorable to RLG.

[28] Tilden evaluated the reasonableness of Rafel's hourly rate based on several factors, stating that, "[Rafel] took over a case in which: (a) the client had fired her prior lawyer; (b) he would have to conclude the case to get paid; (c) he would have to win to get paid; (d) he would have to prevail on appeal to get paid; (e) he would have to enforce the judgment to get paid; (f) his client would then have to pay him; and (g) he would have to pay or forestall payment of hundreds of thousands of dollars in costs—that he might never recover . . . ."

Although Defoor offered the testimony of experts Billbe and Mark Fucile regarding Rafel's alleged breach of fiduciary duty and the standard of care, Defoor offered no such expert testimony to refute Tilden's statements regarding the reasonableness of the fees and costs. Defoor instead asserts that Rafel never charged or collected on its "premium contingent fee" rates other than in Defoor's case. However, we are not persuaded that this contention is material to the reasonableness of the fee.

In addition, Defoor's trial court pleadings maintained that there were flaws in Tilden's testimony that established the existence of disputed factual issues. She asserted, for example, that Tilden's testimony indicated that he had not reviewed each time entry to determine whether it involved wasteful, duplicative, or unsuccessful efforts. However, Tilden's testimony and declaration indicate that he was adequately prepared to offer an opinion concerning the reasonableness of the fees sought by RLG. Defoor also argued that Tilden failed to consider each RPC 1.5 factor in evaluating the reasonableness of the fee. Contrary to this assertion, however, the factors enumerated in RPC 1.5 "are not exclusive. Nor will each factor be relevant in each instance." RPC 1.5, cmt. 1. Further, Tilden's opinion was, in fact, based on an application of a majority of these factors. Tilden's testimony contained no inconsistencies or defects establishing a genuine issue of material fact.

In its motion for partial summary judgment on attorney fees, RLG argued that it was entitled to a determination under CR 56(d) that all of the services

identified on its hourly billings for both matters were actually performed.[29] In support of this claim, Rafel's declaration presented testimony that he performed all of the services charged in the billing records for both matters. However, he stated that there were some time entries for which he determined "Defoor should not have been billed." As a result, Rafel deducted several time entries from RLG's total amount claimed in attorney fees.[30] For example, he removed a billing entry charging Defoor for work done researching and drafting a notice of attorney's lien performed in connection with RLG's motion for leave to withdraw. Rafel also removed an entry charging Defoor for time spent communicating with her regarding RLG's re-engagement.

In her briefing on appeal, Defoor contends that excessive time was claimed even after Rafel removed billing entries. As an example, on appeal Defoor points out that RLG charged her $1,000 for drafting the Agreement and Note at a time when RLG no longer represented her. However, although this

---

[29] CR 56(d) provides:
**Case Not Fully Adjudicated on Motion.** If on motion under the rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.
This claim was asserted in the alternative—in the event that full recovery was not granted on summary judgment.

[30] After removal of several time entries, the total amount of RLG's claim, excluding interest, was $1,286,162.21, which included $497,117.50 for fees in Matter 1 and $405,860.42 for fees in Matter 2. Notably, Defoor testified at deposition that she did not know if the services recorded in the time records were performed or not.

particular entry was included in the exhibits submitted to the trial court, Defoor's trial court pleadings did not specifically identify any such excessive time entries. Rather, her trial court's pleadings merely alluded to general exhibits containing numerous pages of billing records.[31]

Moreover, Defoor's contention that she gained no benefit from RLG's representation is unavailing. Defoor unquestionably gained value from RLG's representation in the underlying litigation. Defoor's judgment against Terry—which included interests in real property valued at over $2 million, a cash sum in the amount of $2,223,368.60, substantial interest in contract rights to property, and half of any undisclosed assets—is largely indicative of such benefit.

Defoor did not proffer sufficient evidence in the trial court to substantiate the existence of any dispute of material fact regarding the reasonableness of RLG's attorney fees. Therefore, the trial court did not err in granting RLG's motion for partial summary judgment.

VI

Defoor next contends that the trial court erred in awarding over $490,000 in prejudgment interest on RLG's collection claims against Defoor. She asserts that courts may only award prejudgment interest when a claim is liquidated.

---

[31] In addition, Defoor's briefing on appeal cites to the record for additional examples of what she assumes to be excessive charges. However, her citation is to a supporting document and its attached exhibits that were submitted to the trial court in connection with a later motion, after the trial court entered partial summary judgment on attorney fees and costs. Therefore, in accordance with RAP 9.12, we decline to consider such evidence, as it was not called to the attention of the trial court prior to its summary judgment ruling.

Because the claim was unliquidated, Defoor argues, the court erred in awarding prejudgment interest. We disagree.

A prevailing party is generally entitled to prejudgment interest. Lakes v. von der Mehden, 117 Wn. App. 212, 217, 70 P.3d 154 (2003). Prejudgment interest is awardable "(1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion." Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 32, 442 P.2d 621 (1968). A liquidated claim is "one where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." Prier, 74 Wn.2d at 32.

Here, the trial court awarded attorney fees to RLG in the amount of $497,117.50 for Matter 1 and $405,860.42 for Matter 2, and determined that "[s]aid sums are liquidated." These sums were determined "with exactness, without reliance on opinion or discretion." Prier, 74 Wn.2d at 32. Thus, the trial court properly awarded RLG prejudgment interest as based on liquidated sums.

VII

Defoor next contends that because the trial court erred in granting summary judgment in favor of RLG regarding the Agreement and Note, this court should reverse the order awarding RLG attorney fees and instead grant Defoor an award of such fees. Here, the Note contains a provision that requires Defoor to pay for all legal fees and costs incurred in collecting or enforcing the Note,

- 29 -

including on appeal. The trial court did not err in granting summary judgment in favor of RLG; thus, the trial court did not err in awarding RLG fees and costs pursuant to the fee shifting provision set forth in the Note.

### VIII

Defoor requests an award of attorney fees on appeal. Rule of Appellate Procedure 18.1(a) permits us to award attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." Because we conclude that RLG prevails on appeal and because the Note specifies an award of attorney fees on appeal, RLG is entitled to an award of attorney fees and costs. Upon proper submission, a commissioner of our court will enter an appropriate order.

Affirmed.

We concur:

SCHINDLER, J. (concurring) — Because the limited case law interpreting RPC 1.8(a) only addresses application of the rule to current clients, I agree with the conclusion that RPC 1.8(a) does not apply. But I write separately to urge the Supreme Court to address whether RPC 1.8(a) should apply to a security interest acquired during the negotiation of the initial fee agreement. While the Court has not addressed the application of RPC 1.8(a) to the acquisition of a security interest during negotiation of a fee agreement, recent Washington State Bar Association (WSBA) Advisory Opinion 2209, "Lawyer Taking Security Interest in Client Property" (2012), states that best practice would include compliance with the requirements of RPC 1.8(a) in those circumstances.

In WSBA Advisory Opinion 2209, the WSBA Rules of Professional Conduct Committee (Committee) recognizes RPC 1.8(a) only applies to current clients, but notes that the Supreme Court has not squarely addressed whether RPC 1.8(a) applies to the negotiation of a security interest as part of the initial fee agreement. Based on authority from other jurisdictions and American Bar Association (ABA) Formal Opinion 02-427, "Contractual Security Interest Obtained by a Lawyer to Secure Payment of a Fee" (2002), the Committee states that best practice would include compliance with the requirements of RPC 1.8(a) when acquiring a security interest, such as a lien, during the negotiation of the initial fee agreement. WSBA Advisory Op. 2209.

WSBA Advisory Opinion 2209 states, in pertinent part:

> The negotiation of the terms of the initial fee agreement is not generally considered a "business transaction" with a client. This is because at the time of the negotiation of the initial fee agreement, the attorney-client relationship is not yet formed. Thus the attorney does not owe the same duty to a prospective client as she would to an existing client. Additionally, the prospective client can walk away from the

transaction. On the other hand, any subsequent modification of the fee agreement is generally considered a business transaction. See Comment [1] to RPC 1.8 ("[RPC 1.8] does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of a fee.").

However, there is some authority from other jurisdictions that RPC 1.8(a) applies even to security interests acquired during the negotiation of the initial fee agreement. See ABA Formal Opinion 02-427. Thus, it is the Committee's opinion that the best practice would include compliance with RPC 1.8(a).

. . . .

Under RPC 1.8(i), an attorney may accept a contractual security interest in a client's real property. Washington courts have not squarely addressed the application of RPC 1.8(a) to the acceptance of a security interest during the initial negotiation of the fee agreement, but the careful attorney would comply with its provisions. If the security interest is created pursuant to a modified fee agreement, the attorney must comply with RPC 1.8(a).[1]

ABA Formal Opinion 02-427 states that "[a] lawyer who acquires a contractual security interest in a client's property to secure payment of fees earned or to be earned must comply with [ABA] Model Rule 1.8(a)."[2] ABA Formal Opinion 02-427 also states that transactions to secure a fee are "regarded in most state and local bar opinions and court decisions as . . . business transaction[s]" subject to the disclosure requirements of

---

[1] See also WSBA Advisory Opinion 2178, "Client signing judgment for estimated attorney's fees in dissolution case" (2008) (A lawyer violates RPC 1.8(a) by obtaining a stipulated judgment to secure anticipated fees in advance of undertaking representation. The Committee "question[ed] whether it would be proper under any circumstances to obtain a negotiable promissory note for a sum certain from a prospective client prior to work being performed or fees being earned."); WSBA Advisory Opinion 1044, "Conflict of interest; receipt of deed of trust to secure future fees" (1986) (Where a law firm "received a deed of trust and promissory note to secure legal fees for future representation," the law firm was required to comply with RPC 1.8(a) "if [the deed and note] were a security interest." (Emphasis added.)).

[2] (Emphasis added.)

32

ABA Model Rule 1.8(a).[3]

Here, the Agreement provides, in pertinent part:

> 5. <u>Lien</u>. Defoor hereby grants RLG a lien for the total amount of the past fees and costs for which she is obligated ($775,000), plus the amount of additional fees and costs incurred by or on behalf of Defoor pursuant to this Agreement. <u>This lien shall apply and be enforceable against any recovery by Defoor in the Litigation and any assets of Defoor, whether awarded in the Litigation, obtained in settlement, or otherwise.</u> Any payment and/or transfer of property to Defoor or for Defoor's benefit in the Litigation shall be paid or given, as the case may be, to RLG in trust for Defoor, and RLG may use said funds or property to discharge, in whole or in part, any amounts due to RLG under this Agreement or the Promissory Note.[4]

RPC 1.8(i) prohibits a lawyer from acquiring a lien "to secure the lawyer's fee or expenses." RPC 1.8(i)(1).[5] Comment 16 to RPC 1.8 states that where "a lawyer acquires by contract a security interest in property other than that recovered through the lawyer's efforts in the litigation, such an acquisition is a business or financial transaction with a client and is governed by the requirements of paragraph (a)." RPC 1.8(a) requires a lawyer to meet strict requirements before entering into a business transaction with a client or acquiring "an ownership, possessory, security or other pecuniary interest adverse to a client."

---

[3] ABA Formal Opinion 02-427 states, in pertinent part:

**Considerations in Securing a Fee Obligation**
> Most state and local bar opinions and court decisions have looked to [ABA] Model Rule 1.8(a) when considering this issue. That rule applies to business transactions with clients. Although a fee agreement with a client is not generally considered to constitute a business transaction, the transaction with a client to secure a fee is itself regarded in most state and local bar opinions and court decisions as a business transaction. The [ABA] Committee [on Ethics and Professional Responsibility] agrees.

(Footnotes omitted.)

[4] (Second emphasis added.)

[5] RPC 1.8(i) states:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
> (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and
> (2) contract with a client for a reasonable contingent fee in a civil case.

If RPC 1.8(a) applied to the Agreement, there is no question that the disclosure requirements were not met.[6] A fee agreement that violates RPC 1.8(a) is against public policy and unenforceable. Valley/50th Ave., LLC v. Stewart, 159 Wn.2d 736, 743, 153 P.3d 186 (2007).

---

[6] RLG did not establish:

(1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger.

In re Disciplinary Proceeding Against McGlothlen, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983).